*In re* MARRIAGE OF CHRISTINE TAKATA, f/k/a Christine Hafley, Petitioner-Appellant, and FRED HAFLEY, Respondent-Appellee.—*In re* MARRIAGE OF CHRISTINE TAKATA, f/k/a Christine Hafley, Petitioner-Appellee, and FRED HAFLEY, Respondent-Appellant.

Second District   Nos. 2—98—0344, 2—98—0622, 2—98—0886, 2—98—1156 cons.

Opinion filed April 9, 1999.

Christine Takata, of St. Charles, *pro se.*

Nicholas H. Ores, of Peoria, for Fred Hafley.

JUSTICE RAPP delivered the opinion of the court:

The marriage between petitioner, Christine Takata (Christine), formerly known as Christine Hafley, and respondent, Fred Hafley (Fred), was dissolved on January 9, 1990. Fred was ordered to pay child support and provide health insurance for the parties' two minor children. Several appeals arising from postdissolution proceedings between the parties were consolidated for decision. In case No. 2—98—0344, previously consolidated with case No. 2—98—0622, Christine argues that (1) the trial court erred when it dismissed her petition for *nunc pro tunc* amendment of a six-year-old court order incorrectly calculating Fred's child support obligation; and (2) the court erred when it awarded her less than the full dollar amount of unpaid health insurance premiums pursuant to section 505.2(d) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505.2(d) (West 1996)). In case No. 2—98—0886, Christine alleges that the trial court erred when it (1) failed to determine Fred's net income and set child support at 25% of what she asserted was Fred's net income; (2) allocated the cost of the children's health insurance and Fred's life insurance policy equally between the parties; and (3) failed to award her attorney fees and costs. In case No. 2—98—1156, Fred appeals the August 27, 1998, order awarding Christine $17,093.46 in child support arrearage due to Fred's unreported income, because he asserts the matter was barred by *res judicata.* We affirm in part and reverse in part.

Shortly after the dissolution of the marriage, Fred's support obligations became in arrears. On September 3, 1991, Judge Richard Baner of Woodford County held a hearing on Fred's motion to reduce his child support obligation. Judge Baner determined that Fred's weekly income as a bartender at "Schooner's" was $297.50. Fred produced a paycheck stub illustrating that he paid $57.50 biweekly toward health insurance for himself and the children. Including the $57.50 insurance premium, Judge Baner found that Fred's biweekly income deductions were $115.34. Judge Baner then deducted $115.34 from what he erroneously calculated as Fred's biweekly gross income, $395. Judge Baner applied 25% of Fred's net income to child support and determined Fred's modified child support obligation was $35.38 per week. Judge Baner again ordered Fred to provide health insurance for the children and further ordered Fred to report by affidavit within 30 days any income received from sources other than Schooner's.

After September 24, 1992, Fred did not pay child support or provide health insurance for the children. Christine became a public

aid recipient and insured the children through Medicaid from the Illinois Department of Public Aid.

On November 26, 1997, Christine filed petitions in De Kalb County for enrollment and *nunc pro tunc* amendment of the September 3, 1991, child support order. The petition for *nunc pro tunc* amendment asked the court to correct Judge Baner's mathematical error in calculating Fred's child support and to apply retroactively the modified amount. On January 6, 1998, Judge Wiley Edmondson of De Kalb County granted Christine's petition for enrollment of the September 3, 1991, child support order but denied her petition for *nunc pro tunc* amendment.

On January 20, 1998, Christine filed two petitions for a rule to show cause. Christine's first petition alleged that Fred failed to make any child support payments since September 24, 1992, and sought immediate payment. The petition also alleged that Fred was not reporting income he was earning in the construction field and sought an order requiring Fred to inform Christine of the names and addresses of his employers.

Christine's second petition for a rule to show cause alleged that Fred failed to maintain health insurance for the children and sought an award of the dollar amount of the unpaid premiums. Based on the $57 biweekly premium to which Fred testified in September 1991, Christine alleged Fred was $12,894.03 in arrears. This petition also sought an order requiring Fred to inform Christine of the name and address of his employers.

The court held a hearing on the pending petitions on February 19, 1998. The judge denied Christine's petition to reconsider the dismissal of her *nunc pro tunc* amendment. She timely filed her notice of appeal. The court also found Fred in civil contempt for failing to pay his outstanding child support arrearage and failing to provide health insurance for the children. Judge Edmondson ordered Fred to pay the full child support arrearage but ordered Fred to pay only 25% of the unpaid health insurance premiums, calculated to be $3,223.50. The court reasoned that 25% was appropriate because this was the amount of additional child support Christine would have received had the court not ordered Fred to provide insurance and deducted the premiums from his income to determine child support. Because Christine was provided health insurance at no cost to her, Judge Edmondson stated that to award the full amount of unpaid premiums would result in a "windfall" because she was not "out anything."

Judge Edmondson revisited this ruling on Christine's motion to reconsider, which he ultimately denied. Judge Edmondson admitted that the statutory language supported Christine's argument that she

should be entitled to the full dollar amount of the premium arrearage, but he stressed that there was no evidence that she incurred medical costs for the children that were not covered by the Illinois Department of Public Aid. He acknowledged that the dilemma was such that, if he denied relief to Christine, then Fred would receive a windfall because he is excused from his health insurance obligation. On the other hand, if the court were to grant Christine's petition, she would receive an award from Fred that was covered at no cost to her by the Illinois Department of Public Aid.

In the end, the court found that because the health insurance premiums were deducted from Fred's income to determine child support, Christine was entitled to 25% of the unpaid premiums, which represented the amount of additional child support she would have received had the court not deducted the insurance premiums. Christine filed her timely notice of appeal from the insurance premium order and it was consolidated with her appeal from the order denying her petition for *nunc pro tunc* amendment.

On April 9, 1998, Christine filed a petition to modify Fred's child support obligation of $35.38 per week in which she sought (1) to increase Fred's child support obligation; (2) to obligate Fred to pay for the cost of the children's health insurance, which was now estimated to be $137.84 per month; and (3) to require Fred to obtain and pay for a life insurance policy to secure his future child support payments. Fred filed a countermotion to modify his child support, asking to be relieved of his obligation to provide health and hospitalization insurance for the children.

On May 11, 1998, at the hearing on the two motions, Fred admitted that he receives some income that he does not report to the IRS or to the court. Christine presented Fred's tax statements in which Fred admitted he earned close to $30,000 per year prior to the dissolution. Christine also presented evidence that almost $18,000, over and above Fred's current wife's income, was deposited in Fred's joint checking account.

Judge Edmondson found that there was a material change in circumstances subsequent to the last court order in September 1991 and that the child support awarded in 1991 was disproportionate to the actual costs of the children. He granted Fred's petition to stop paying health and medical insurance for the children and ordered Christine to cover the expense out of Fred's support obligation. Furthermore, the judge ordered Christine to obtain life insurance on Fred's life at $43.41 per month.

The judge found that there was no material change in circum-

stances since the time the parties lived together when Fred had an income close to $30,000 per year. The judge stated:

"I found Mr. Hafley's testimony not to be credible. I find that his current income, gross or net, is difficult to ascertain and uncertain. Frankly, I don't know what it is. I believe that he earns at least $18,000 per year upon which he pays no taxes. The record shows that he has capacity to earn income greatly in excess of the sum he claims to earn now. The court finds that he has earned in the past as much as approximately $30,000 gross from self-employment. There's no evidence to indicate that he couldn't or indeed that he doesn't earn that now."

On May 13, 1998, Judge Edmondson entered his written order in which he memorialized his previous findings. The judge also found that Fred had no reasonable explanation for the almost $18,000 in deposits. In figuring child support, Judge Edmondson stated that "in this case, the Court cannot determine guideline child support; but must look primarily to the reasonable needs of the children in setting support." Thus, the judge ordered Fred to pay child support equal to approximately one-half of the reasonable expenses of the children, in the amount of $125.96 per week, and required Christine to use this money to obtain medical insurance for the children and life insurance to secure Fred's future child support payments.

Subsequently, Christine's motion to reconsider was denied. In response to Christine's argument that the child support was not set at 25% of what she asserted was Fred's income, Judge Edmondson stated:

"I wanted to set a child support award that would give due consideration to the expenses of the Petitioner and the income of the Respondent and frankly one of my concerns was that if I set an amount that was greater than what he'd be able to pay then I wouldn't be able to enforce it."

On June 2, 1998, Christine filed a third petition for a rule to show cause. This petition alleged that Fred was in contempt for violating the court's mandate to report any income from sources other than Schooner's. Christine asserted that unreported income resulted in an additional arrearage of $3,750 per child, per year, exclusive of interest.

On June 23, 1998, the court denied Fred's motion to dismiss the June 2 petition. On July 9, Fred filed an affidavit outlining the income he received from various employers from 1993 through 1995, of which he had not previously informed the court.

At a hearing on August 27, 1998, Christine stated that she brought this petition late because she wasn't able to discover the concealment of Fred's income until the February 19, 1998, hearing. Judge Edmondson found that Fred wilfully violated the court order to report any income received other than from his employment at Schooner's. The court concluded that because his income was unreported, Fred paid

less than the statutory guideline child support. The court therefore entered a judgment against Fred and in favor of Christine in the amount of $17,093.46. Fred timely filed his notice of appeal.

## I. CASES NOS. 2—98—0344 AND 2—98—0622

Christine first argues that Judge Edmondson erred when he denied her petition for *nunc pro tunc* amendment of the September 3, 1991, child support order. In her petition, Christine alleged that Judge Baner erroneously determined Fred's child support obligation because the judge miscalculated Fred's net income. Christine now asks this court to grant her petition for *nunc pro tunc* amendment and, thus, retroactively increase Fred's child support.

■ In general, a trial court loses jurisdiction to vacate or modify its judgment 30 days after the entry of the judgment unless a timely post-judgment motion is filed. *Beck v. Stepp*, 144 Ill. 2d 232, 238 (1991). At any time, however, a court may modify its judgment *nunc pro tunc* to correct a clerical error or matter of form so that the record conforms to the judgment actually rendered by the court. *Beck*, 144 Ill. 2d at 239. Clerical errors or matters of form are those errors, mistakes, or omissions that are not the result of the judicial function. *Dauderman v. Dauderman*, 130 Ill. App. 2d 807, 810 (1970).

■ The main purpose of a *nunc pro tunc* order is to correct the record of judgment, not to alter the actual judgment of the court. *Beck*, 144 Ill. 2d at 239. A *nunc pro tunc* order may not be used to supply omitted judicial action, to correct judicial errors under the pretense of correcting clerical errors, or to cure a jurisdictional defect. *Beck*, 144 Ill. 2d at 239. For instance, a court may not properly issue a *nunc pro tunc* order to affix child support obligations where the original divorce decree merely reserved jurisdiction for child support. See *Trosper v. Trosper*, 82 Ill. App. 3d 1012 (1980).

■ In the present case, we note that the record unequivocally supports Christine's assertion that Judge Baner miscalculated Fred's net income. The judge found that Fred earned $297.50 per week but then determined Fred's biweekly income to be $395, instead of $595. Because of this error, Judge Baner incorrectly set Fred's child support at around 15% of Fred's income. As such, Fred's weekly child support should have been set about $20 higher than what was awarded.

We find, however, that determining a spouse's net income for the purpose of setting child support is part of the judicial function. An error in this determination, thus, is a judicial error. When determining a spouse's net income for child support purposes, the judge employs a certain amount of discretion in determining an appropriate and reasonable amount. Here, for instance, Judge Baner subtracted $115.34

from Fred's biweekly income when the record established that Fred only paid $57.50 for biweekly health insurance premiums. In other words, Judge Baner employed his judicial discretion and deducted more than just the health insurance premiums from Fred's income.

Consequently, a mathematical error in determining a spouse's income is not a clerical error; rather, as it is the product of the judicial function, it is a judicial error. We hold, therefore, that Judge Baner's judicial error in miscalculating Fred's net income is outside the power of a *nunc pro tunc* order.

■ Christine's second argument is that Judge Edmondson erred by not awarding her the full dollar amount of the unpaid health insurance when Fred failed to provide health insurance for the parties' minor children. Christine relies on section 505.2(d) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/505.2(d) (West 1996)), which provides that, when a parent owing a duty of support fails to provide health insurance pursuant to a court order, that parent is liable to the other party for premiums not paid. *In re Parentage of Janssen*, 292 Ill. App. 3d 219, 227 (1997).

■ Before we discuss the merits of Christine's second argument, we must address a pending motion. Fred filed a motion to strike this argument from Christine's reply brief because Fred asserts that Christine made false statements in her brief. Christine responded by claiming that it is Fred who made the false statements. Upon review, we perceive the alleged false statements as merely hair splitting by the parties. Therefore, we deny Fred's motion and turn to plaintiff's second argument.

Fred was ordered to provide and maintain health insurance for the children. At the September 3, 1991, hearing, Fred established that he obtained insurance by producing a pay stub denoting a biweekly premium payment of $57.50. Judge Baner deducted these premiums from Fred's income and then set child support at 25% of Fred's adjusted income. Shortly thereafter, Fred failed to maintain the health insurance.

On February 19, 1998, Judge Edmondson found Fred in contempt for failing to provide health insurance. Christine asserted that section 505.2(d) entitled her to the full amount of the unpaid insurance premiums, $12,894.03, calculated by using the $57.50 biweekly cost that Fred established. The judge found that section 505.2(d) applied but only awarded Christine 25% of the premium arrearage, $3,223.50, reasoning that this was the additional amount of child support Christine would have received had Judge Baner not deducted the premiums from Fred's income before calculating support. Judge Edmondson was concerned that an award of the full amount of unpaid

premiums would constitute a windfall because Christine insured the children through public aid at no cost to her. Judge Edmondson stated that he found nothing in the statute to indicate that the legislature intended "to create a kind of civil penalty that would compensate someone" for money they have not spent.

In *In re Marriage of Self*, 265 Ill. App. 3d 804 (1994), the court interpreted section 505.2(b) of the Act. The obligor, in this case, argued that he could not afford to maintain court-ordered health insurance. The court decided that the use of the word "shall" leaves no room for discretion and that the trial court was required to enforce the health insurance provision of section 505.2. *Self*, 265 Ill. App. 3d at 805. Parenthetically, the *Self* court discussed the adoption of section 505.2 as an effort on the part of the General Assembly to comply with federally mandated child support contained in the federal " 'Family Support Act of 1988, Pub. L. No. 100—485, 102 Stat. 2343 (1988); 45 C.F.R. § 302 *et seq.* (1992)' and its regulations." *Self*, 265 Ill. App. 3d at 805.

Focusing on the federal mandates, Justice Cook, in his special concurrence, stated that these mandates on child support have generally been positive, but in many cases the flexibility to come up with a sensible solution on the basis of particular facts has been lost. *Self*, 265 Ill. App. 3d at 806 (Cook, J., specially concurring). Judge Edmondson, in the present case, attempted to be flexible in his decision considering all of the known factors that could have occurred between 1991 and 1998.

As Judge Edmondson correctly emphasized, the issue presented before us is whether section 505.2(d) grants a parent who insures her children through public aid, at no cost, the right to collect the dollar value of the unpaid insurance premiums from a parent who was under a court order to provide health insurance. This is a question of first impression for this court. Therefore, without prior authority addressing this issue, the only available method for us to employ to discern the meaning behind this section is statutory interpretation.

■ The primary rule of statutory interpretation is that the court should ascertain and give effect to the legislative intent. *People v. Bubolz*, 288 Ill. App. 3d 46 (1997). To determine legislative intent, the court looks first to the language of the statute, giving it its plain and ordinary meaning. *Bubolz*, 288 Ill. App. 3d at 46. The court must also consider every part of the statute together and give every word or phrase some reasonable meaning. *Bubolz*, 288 Ill. App. 3d at 46-47. When the statutory language is clear, no resort is necessary to other aids of construction. *In re Marriage of Mitchell*, 181 Ill. 2d 169, 173 (1998).

■ Section 505.2(d) of the Act provides:

"The dollar amount of the premiums for court-ordered health insurance *** *shall* be considered an additional child support obligation owed by the obligor. Whenever the obligor fails to provide or maintain health insurance pursuant to an order for support, the obligor *shall* be liable to the obligee for the dollar amount of the premiums which were not paid ***." (Emphasis added.) 750 ILCS 5/505.2(d) (West 1996).

Under the rules for statutory construction, the word "shall" ordinarily connotes a mandatory obligation, unless the context of the statute indicates otherwise. *Self*, 265 Ill. App. 3d at 805. In the above context, we see no other interpretation but that the use of "shall" creates a mandatory obligation. The plain and ordinary meaning of section 505.2(d), therefore, is that the dollar amount of court-ordered insurance premiums is considered as child support and that the obligor is liable to the obligee for the unpaid premiums. Significantly, the statute does not require the obligee to cover the cost of insurance in order to recover unpaid premiums from the obligor.

■ As the dollar amount of court-ordered health insurance premiums is considered child support, it can only be determined in this situation that Fred is liable for the entire amount of the health insurance premiums he avoided. In determining Fred's liability for the child support arrearage, the court did not discount his liability from the amount in arrears. The statute mandates that the court treat unpaid insurance premiums identically. As such, providing health insurance is a support obligation, and, mirroring child support, Christine is not required to spend money to collect support. Because insurance premiums are considered child support, they are for the benefit of the parties' children and cannot be considered a windfall if the court orders them to be paid directly to Christine.

Furthermore, to discount Fred's liability because Christine did not pay to provide insurance rewards Fred for shirking his parental court-ordered duties. Regardless of whether Fred pays an insurance company or Christine, he was ordered to provide insurance, not just 25% of insurance premiums. It is not a penalty to be required to pay the full amount because it does not increase the payment burden shouldered by Fred. The only difference for Fred is to whom the payment is made. Significantly, Fred took no action to modify the previous judgment when his employment changed and he was no longer provided with available health insurance.

Therefore, we decline to add to the statute the requirement that an obligee parent must purchase insurance in order to seek the dollar value of the premiums from the obligor parent who neglected to

provide insurance. We reverse Judge Edmondson's decision awarding Christine $3,223.50 for unpaid insurance premiums and award Christine $12,894.03, the full amount of unpaid premiums including interest.

## II. CASE NO. 2—98—0886

■ Christine argues that the trial court erred in its order entered May 13, 1998, by failing to determine Fred's net income and set child support at 25% of Fred's determined net income. Generally, section 505(a)(1) of the Act specifies a percentage of a noncustodial parent's income as representing an appropriate child support award. See 750 ILCS 5/505(a)(1) (West 1996) (requiring noncustodial parent to pay 25% of net income as support for two children). The amount of child support is within the sound discretion of the trial court and will not be set aside absent an abuse of discretion. *In re Marriage of Severino,* 298 Ill. App. 3d 224, 229 (1998). An abuse of discretion occurs where no reasonable person would take the view adopted by the trial court. *Severino,* 298 Ill. App. 3d at 229.

■ Christine erroneously believes that the trial court is required to determine the supporting parent's net income in all cases. Normally, the trial court is required to make a threshold determination of the party's net income before applying section 505. *Villanueva v. O'Gara,* 282 Ill. App. 3d 147, 150 (1996). In section 505(a)(5) of the Act, however, the legislature recognized that there may arise situations where the amount of the noncustodial parent's net income could not be accurately determined. Section 505(a)(5) provides:

> "If the net income cannot be determined because of default or any other reason, the court shall order support in an amount considered reasonable in the particular case. The final order in all cases shall state the support level in dollar amounts." 750 ILCS 5/505(a)(5) (West 1996).

■ Here, the trial judge found Fred's testimony was not credible. Fred admitted that he failed to report his income to the court for over six years, although he was under direct court order to report income from sources other than Schooner's. Fred claimed that his gross income was approximately $8,000 per year, yet when he was engaged in the same employment during the marriage, he earned close to $30,000. Christine established that Fred earned at least $18,000 in one year, and that was including only what Fred deposited into his joint bank account. There is no way for Christine to account for funds Fred earned and kept in his pocket. As such, Fred has not filed an accurate income tax statement in over six years. Without credible evidence of respondent's net income, the trial court was compelled to make the award of child support in an amount that was reasonable in the case.

This issue was discussed in detail in a case decided by this court, to which neither party cited, *Severino*, 298 Ill. App. 3d 224. In *Severino*, the respondent challenged the award of child support when the court did not make a specific finding as to his net income. Similar to the present case, we noted that the trial court found respondent's testimony concerning his net income to lack credibility. We stated that, "where the trial court is unable to determine the net income of the party, it is illogical to assert that the trial court must make an express finding for varying the child support award from a percentage recommended by the statute." *Severino*, 298 Ill. App. 3d at 231. We declined to hold that the trial court was required to determine the respondent's net income and set child support at the statutory level; instead, we interpreted section 505(a)(5) merely to require that, in situations where the net income of a party is difficult to determine, the trial court, "set child support in an amount reasonable in the particular case and express that award of support in a dollar amount." *Severino*, 298 Ill. App. 3d at 231.

Here, Judge Edmondson found Fred's net income to be difficult to determine. He articulated in no uncertain terms that, because he could not determine guideline child support, he "must look primarily to the reasonable needs of the children in setting support." Judge Edmondson then determined that $125.96 per week was a reasonable child support award. In accord with section 505(a)(5), because Judge Edmondson could not determine Fred's net income, he ordered support in an amount considered reasonable in this case and he stated that support level in a dollar amount.

Moreover, when extrapolated to annual income in the context of the guidelines, the weekly support level indicates that the trial court found Fred to be earning an annual net income of over $26,000, which is not against the manifest weight of the evidence. Therefore, we do not find that the court abused its discretion by failing to determine Fred's net income and setting Fred's child support obligation at $125.96 per week.

Christine further argues that the trial court erred because it allocated the cost of the children's health insurance and Fred's life insurance policy equally between the parties, instead of ordering Fred to bear the cost alone. Although the court required Christine to cover the expense of such items, the court also increased her award of child support to cover these items. Moreover, we know of no requirement that the supporting parent must pay for health and life insurance; rather, it was appropriate for the court to consider such items in determining Fred's child support obligation. Therefore, we find that the court did not abuse its discretion.

■ Finally, Christine argues that the trial court erred because it refused to award her costs incurred in the trial court. The award of attorney fees or costs is a matter within the sole discretion of the trial court and its discretion will not be disturbed absent a showing of an abuse of discretion. *In re Marriage of Lehr*, 217 Ill. App. 3d 929, 939-40 (1991). Considering the limited resources of both parties and the substantial awards Christine obtained from Fred within a short time period, we fail to see how the trial court abused its discretion by requiring the parties to bear their own costs.

### III. CASE NO. 2—98—1156

We now turn to Fred's appeal, in which Fred argues that the court erred in its August 27, 1998, order that awarded Christine $17,093.46, which the court determined represented the amount of child support Fred would have paid had he followed the court's direction and reported his income. Fred alleges that the court erred because Christine's petition for a rule to show cause, filed on June 2, 1998, which alleged that Fred failed to report income, was barred by *res judicata*.

■ The doctrine of *res judicata* holds that a final judgment on the merits will bar an identical cause of action between the same parties or their privies. *Housing Authority v. Young Men's Christian Ass'n*, 101 Ill. 2d 246, 251 (1984). Under Supreme Court Rule 273, an involuntary dismissal of an action operates as an adjudication upon the merits. 134 Ill. 2d R. 273.

■ In the present case, Christine filed several petitions for a rule to show cause. Fred asserts that *res judicata* applies because Judge Edmondson dismissed Christine's two previous petitions for a rule to show cause. Indeed, Christine's January 20 petitions were dismissed by Judge Edmondson and represent a final judgment. Moreover, the issues are between the same parties. However, a finding of *res judicata* is not warranted because the subject matter of the petitions was not identical.

An element required for a finding of *res judicata* is identity of subject matter. *Singer v. Brookman*, 217 Ill. App. 3d 870, 876 (1991). Christine's January 20 petitions were primarily for the child support arrearage and the health insurance premiums arrearage, both pursuant to the 1991 order. The June 2 petition solely sought a finding that Fred's support level was below the statutory guideline because of unreported income. While Christine did allege in the earlier petitions that Fred was earning income as a carpenter and requested in the earlier petitions that Fred inform her of his employers, she did not allege that he was paying below the statutory level for support. Nor did

she allege that Fred was in arrears because of unreported income. By contrast, the June 2 petition alleged that Fred failed to report income and specifically sought an award of the amount necessary to maintain the 25% child support level.

Not only does *res judicata* bar relitigating issues previously tried, but it also bars those issues that could have been tried. *Singer*, 217 Ill. App. 3d at 877. However, this principle does not apply to the present case because Christine could not prove Fred's income until he stated in court in February 1998 that he shared a bank account with his wife. Only then was Christine able to establish that Fred was earning more than he claimed. We find, therefore, that *res judicata* does not bar the June 2 petition for rule to show cause.

For the foregoing reasons, the decision of the circuit court of De Kalb County with respect to health insurance arrearage under section 505.2 is reversed. All other matters before this court are affirmed. Petitioner's request for costs incurred on appeal is denied.

Affirmed in part and reversed in part.

BOWMAN, P.J., and McLAREN, J., concur.