HARVEY E. MORSE, Plaintiff-Appellee, v. THE DEPARTMENT OF PROFESSIONAL REGULATION *et al.*, Defendants-Appellants.

Fourth District   No. 4—00—0094

Argued September 13, 2000.—Opinion filed October 6, 2000.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Timothy K. McPike (argued), Assistant Attorney General, of counsel), for appellants.

William P. Hardy (argued) and Clare E. Connor, both of Hinshaw & Culbertson, of Springfield, for appellee.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendants, the Illinois Department of Professional Regulation and Leonard A. Sherman, Director (collectively referred to as Department), appeal from the circuit court's reversal of the Department's finding that Harvey Morse was unlawfully working as a private detective without a license. We affirm.

On March 23, 1998, the Department issued a cease and desist or-

der to Morse, finding that Morse "was operating as a private detective in Illinois by contacting individuals regarding locating personal property for a fee." The Department's action was prompted by a September 24, 1996, letter that Morse, a Florida resident, sent to an Illinois resident promoting his "International Genealogical Research" firm. Morse stated, "[w]e wish to inform you that we have been conducting research and investigation that indicate that you might be entitled to receive money or assets of which you are currently unaware." Morse's firm specializes in what is commonly referred to as "heir hunting," which typically involves locating persons who are entitled to recover unclaimed estate assets. Morse identifies unclaimed assets, uses genealogical research to trace the potential claimants, and then offers to assist the claimant in retrieving the assets for a 40% contingent fee.

■ We must determine if Morse's business activities are subject to the Private Detective, Private Alarm, Private Security, and Locksmith Act of 1993 (Act) (225 ILCS 446/1 through 299 (West 1998)). Section 5 of the Act defines "private detective" as:

"any person who by any means, including but not limited to manual or electronic methods, engages in the business of, accepts employment to furnish, or agrees to make or makes investigations for fees or other valuable consideration to obtain information with reference to:

＊ ＊ ＊

(3) The location, disposition, or recovery of lost or stolen property." 225 ILCS 446/5 (West 1998).

In response to the cease and desist order, Morse filed a motion to vacate with the Department, arguing that he was not acting as a private detective; rather, he was engaging in genealogy, an exempt practice under the Act. Section 30(a) of the Act provides:

"(a) This Act does not apply to:

＊ ＊ ＊

(9—5) A person, firm, or corporation engaged solely and exclusively in tracing and compiling lineage or ancestry." 225 ILCS 446/30(a) (West 1998).

The Department responded to Morse's motion, arguing that Morse was engaged in "[t]he location, disposition, or recovery of lost or stolen property" for a fee (225 ILCS 446/5 (West 1998) (subsection (3) of definition of "private detective")) and that his activities constituted acting as a private detective. Director Sherman denied Morse's motion to vacate, and Morse subsequently filed a complaint for administrative review in the circuit court.

After reviewing the record and the parties' written submissions, the circuit court found that Morse was "not in the business of finding

lost property" as referenced in the Act. However, the circuit court also noted that Morse was not engaged in "what is commonly understood as genealogical research" but was "employing techniques of both a private detective and a genealogist, [as] a tracer of unclaimed assets." Ultimately, the circuit court held that, as a matter of law, Morse's activities were not governed by the Act. The circuit court reversed the Director's decision and vacated the cease and desist order, finding that the Department could not use such a broad, sweeping application of the Act to regulate Morse's activities.

■ The Department appealed, asserting the same arguments that it did before the circuit court. The facts are undisputed in this case, and the parties agree that we are presented solely with issues of law; thus, we will conduct a *de novo* review of the limited record on appeal. Courts give substantial weight and deference to the interpretation placed on a statute by the agency charged with its administration and enforcement (*Central City Education Ass'n v. Illinois Educational Labor Relations Board*, 149 Ill. 2d 496, 510, 599 N.E.2d 892, 898 (1992)) unless it is erroneous as a matter of law. However, we are not bound by the administrative agency's interpretation of a statute. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230, 239, 664 N.E.2d 61, 66 (1996). Our decision hinges upon the interpretation of sections 5 and 30(a)(9—5) of the Act (225 ILCS 446/5, 30(a)(9—5) (West 1998)).

## I. LOST PROPERTY

■ The circuit court ruled that the assets Morse located were not "lost property" but unclaimed assets, because "lost," as used in the Act, "presumes prior ownership and possession." The Department argues that a person's entitlement to unclaimed estate assets qualifies as "lost property." "Lost property" has been defined at common law as property that was unintentionally separated from the dominion and control of its owner. *Kahr v. Markland*, 187 Ill. App. 3d 603, 607-08, 543 N.E.2d 579, 582 (1989); *Hendle v. Stevens*, 224 Ill. App. 3d 1046, 1056, 586 N.E.2d 826, 833 (1992). Black's defines "lost property" as "[p]roperty that the owner no longer possesses because of accident, negligence, or carelessness, and that cannot be located by an ordinary, diligent search." Black's Law Dictionary 1233 (7th ed. 1999).

We must apply these definitions, giving the statutory words and phrases their plain, ordinary, and reasonable meaning. *In re Marriage of Takata*, 304 Ill. App. 3d 85, 94, 709 N.E.2d 715, 722 (1999). Applying these definitions to the facts presented here, we cannot conclude that the unclaimed assets referred to in Morse's letter are those that fall within the plain and ordinary meaning of "lost property" referred

to by the statute. The assets at issue here were not "unintentionally separated from the control" of the heirs. Further, it would strain reason to find that the heirs no longer possess the assets "because of accident, negligence, or carelessness." Utilizing heir hunting to access unclaimed estate assets is not synonymous with the "location, disposition, or recovery of lost or stolen property." 225 ILCS 446/5 (West 1998).

## II. GENEALOGY EXCEPTION

In 1998, the General Assembly amended the Act, providing a specific exemption for individuals who engage exclusively in tracing and compiling lineage and ancestry. 225 ILCS 446/30(a)(9—5) (West 1998). Morse argues that he falls within this exception. In support of this claim, he emphasizes that his letterhead plainly refers to his line of work as "International Genealogical Research." Morse also argues that the body of the letter establishes that he is merely in the business of locating people (which is what genealogy is all about), not necessarily in the business of locating property. Genealogy is defined as "[t]he summary history or table of a family, showing how the persons there named are connected together." Black's Law Dictionary 682 (6th ed. 1990). Morse argues that his business is precisely what the legislature had in mind when it enacted the exception provided in section 30(a)(9—5). We disagree.

■ Genealogical research does involve "detective" type of activities necessary to trace a family's lineage. Morse, however, does more than simply create family trees. His incentive is the financial payoff after tracing unclaimed assets to the proper heirs. We cannot conclude that the General Assembly intended to specifically exempt "heir finding" through this exception in the Act. Morse's activities do not fall squarely within the confines of the exception as he does more than "exclusively" engage in "tracing and compiling lineage or ancestry." 225 ILCS 446/30(a)(9—5) (West 1998). We agree with the circuit court that Morse's business falls somewhere between private detective work and exclusive genealogy.

As a final matter, we note that courts in several jurisdictions and commentators have noted the problems of unregulated "heir hunting," including fraud, extortion, excessive fees, and unauthorized practice of law. See *Twiss v. State of New Jersey, Department of Treasury, Office of Financial Management*, 124 N.J. 461, 473, 591 A.2d 913, 918-19 (1991) (noting practice of the Treasurer not to disclose the amount due in abandoned accounts was in reaction to the "deceptive and fraudulent practices of heir hunters in pursuing their business"); *Nelson v. McGoldrick*, 73 Wash. App. 763, 778, 871 P.2d 177, 184 (1994)

(Alexander, J., dissenting) (heir hunters' pressuring clients with the equivalent of criminal extortion and withholding information from another regarding a person's legal claims is extortion), *rev'd*, 127 Wash. 2d 124, 896 P.2d 1258 (1994); *In re Taylor*, 216 B.R. 515, 526 (E.D. Pa. 1998) (noting the "inherent unfairness involved in finders' method of solicitation of their business and fixing their fees"), *appeal denied*, 220 B.R. 854 (E.D. Pa. 1998); Annotation, *Heir Hunting*, 171 A.L.R. 351 (1947) (noting cases of heir hunting and general attitude of distaste by courts, citing cases from the 1930s).

The Department argues that the problems associated with the unregulated practice of heir hunting, which include fraud, extortion, excessive fees, and the unauthorized practice of law, are precisely the type of "evil to be remedied" by the Act. 225 ILCS 446/10 (West 1998). The Department encourages us to interpret the Act liberally to effectuate that purpose. While we recognize the Department's legitimate concerns regarding the business of heir hunting, we cannot sanction such a broad and sweeping application of the Act. As the circuit court pointed out, this is an issue better reserved for the legislature, and we decline to strain reason to find that Morse's activities are regulated by the existing statutes governing private detectives.

Affirmed.

GARMAN and KNECHT, JJ., concur.