ARIES HEALTHCARE OF ILLINOIS, INC., d/b/a Riveredge Hospital, Plaintiff-Appellant, v. THE DEPARTMENT OF PUBLIC AID *et al.*, Respondents-Appellees.

Fourth District   No. 4—00—1049

Argued July 24, 2001.—Opinion filed September 10, 2001.

Edward J. Cunningham, of Brown, Hay & Stephens, of Springfield, and Daniel J. Mulvanny (argued), of Law Offices of Daniel J. Mulvanny, of Oak Park, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Paul Racette (argued), Assistant Attorney General, of counsel), for appellees.

JUSTICE TURNER delivered the opinion of the court:

Plaintiff, Aries Healthcare of Illinois, Inc., d/b/a Riveredge Hospital (Riveredge), sought judicial review of the decision by the Department of Public Aid (Department) to deny Riveredge's application for disproportionate-share-hospital (DSH) status. The circuit court affirmed the Department's decision. Riveredge appeals, arguing the Department erred in refusing to consider additional information filed after an application deadline, in its review procedure, to correct Riveredge's accounting error in its initial application. We affirm.

## I. BACKGROUND

Riveredge is a licensed psychiatric hospital participating in Medicaid. Riveredge also receives reimbursement funds from Cook County and the Illinois Department of Children and Family Services (DCFS). Payments from these sources, plus inpatient charges for charity care, are used in determining DSH qualification based on low-income utilization. See 89 Ill. Adm. Code § 148.120(a)(2) (Conway Greene CD-ROM September 1999). The Department makes adjustment payments to hospitals qualifying for DSH status. See 89 Ill. Adm. Code § 148.120(a) (Conway Greene CD-ROM September 1999).

In April 1999, the Department notified Riveredge of a July 1, 1999, deadline for postmarking information required for DSH determination. See 89 Ill. Adm. Code § 148.120(f)(1) (Conway Greene CD-ROM September 1999). This information must reflect (1) total hospital net revenue for all patient services, (2) total payments received directly from state and local governments for all patient services, (3) total gross inpatient hospital charges for charity care, and (4) total gross inpatient hospital charges. See 89 Ill. Adm. Code §§ 148.120(d)(1) through (d)(4) (Conway Greene CD-ROM September 1999).

In May 1999, Riveredge applied for DSH status for rate-year 2000 by submitting a form, cash-posting summaries, monthly operating statements, a trial balance, and audited financial statements. The form stated Riveredge had (1) direct payments from state and local governments of $3,209,832, (2) total hospital net revenue of $14,881,174, (3) total gross inpatient hospital charges for charity care of $731,245, and (4) total hospital gross charges of $31,942,729. Riveredge derived the first amount from the cash-posting summaries, identifying payments from Medicaid, DCFS, and Cook County.

Based on this information, the Department calculated Riveredge's low-income utilization rate as 23.86%, adding the first amount as a percentage of the second amount to the third amount as a percentage of the fourth amount. In August 1999, the Department informed Riveredge it failed to qualify for DSH status because its low-income utilization rate did not exceed 25%.

Riveredge sent the Department a letter, postmarked September 18, 1999, to appeal the DSH determination. See 89 Ill. Adm. Code § 148.310(b) (Conway Greene CD-ROM September 1999). Riveredge attached a "revised" form, stating it received $4,110,183 in direct payments from state and local governments. Riveredge also attached four checks from DCFS, totaling $900,351.33. Riveredge's letter indicated these payments were incorrectly posted to an "unapplied cash" account instead of a DCFS account. Riveredge attached a copy of the cash-posting summaries with asterisks marking the increase in "unapplied cash" from $13,867 in June 1996 to $1,112,331 in June 1997.

In October 1999, the Department responded to Riveredge's appeal letter, stating the Department is prohibited by rule from including the corrections in its DSH determination because Riveredge did not submit them by July 1, 1999. In November 1999, Riveredge filed its complaint for administrative review in the circuit court. In November 2000, the circuit court awarded judgment to the Department. This appeal followed.

## II. ANALYSIS

### A. Standard of Review

•1 Riveredge contends the Department should have granted it a substantive appeal and should have considered the information Riveredge submitted after the July 1, 1999, deadline. Riveredge argues the Department's refusal to grant DSH status was based on an erroneous interpretation of its regulations.

We conduct a *de novo* review because the facts are undisputed and we are presented solely with issues of law. *Morse v. Department of Professional Regulation*, 316 Ill. App. 3d 664, 667, 737 N.E.2d 678, 680 (2000). An agency's interpretation of its own regulations is subject to some deference on review. *Dimensions Medical Center, Ltd. v. Elmhurst Outpatient Surgery Center, L.L.C.*, 307 Ill. App. 3d 781, 800, 718 N.E.2d 249, 263 (1999).

### B. Applicability of Information-Filing Deadline to Review Procedure

•2 Riveredge asserts the Department erred in refusing to consider revised and supplemental information filed with its appeal because the time-limit requirement for filing information applies only to "initial determinations." The Department's regulations provide:

> "The information required *** must be received no later than the first day of July preceding the DSH determination year for which the hospital is requesting consideration of such information for the determination of DSH qualification. Information required *** which is not received in compliance with these limitations will not be considered for *the determination* of those hospitals qualified for DSH adjustments." (Emphasis added.) 89 Ill. Adm. Code § 148.120(f)(1) (Conway Greene CD-ROM September 1999).

We reject Riveredge's interpretation because the Department's regulations provide only one determination of eligibility for DSH status. The language of section 148.120(f)(1) supports this conclusion. We disagree with Riveredge's characterization of the Department's review procedure in section 148.310(b) as a "final determination" of DSH status. Instead, review is limited to "*verification* that the Department utilized criteria in accordance with State regulations" (emphasis added) (89 Ill. Adm. Code § 148.310(b)(2)(A) (Conway Greene CD-ROM September 1999)) and "*verification* that low[-]income utilization rates were calculated in accordance with federal and State regulations" (emphasis added) (89 Ill. Adm. Code § 148.310(b)(2)(C) (Conway Greene CD-ROM September 1999)). Finally, an interpretation allowing Riveredge to revise and supplement its application for DSH status would render the deadline meaningless. Therefore, section

148.120(f)(1) clearly required Riveredge to submit all necessary information prior to July 1, 1999, and the Department did not err in refusing to consider any additional information Riveredge filed after the deadline.

## C. Scope of Review Procedure

•3 Riveredge next argues, even if the deadline bars the information in its September 1999 filing, it should have received DSH status because it submitted, prior to July 1, 1999, "raw data" establishing its eligibility. Riveredge contends its May 1999 filing was sufficient to qualify for DSH status but for its "error in calculation," which, Riveredge asserts, may be corrected on review.

However, Riveredge does not dispute the Department's "initial determination" to deny DSH status. The Department did not have sufficient information to identify $900,351.33 in DCFS payments posted to an "unapplied cash" account. As stated, we have determined the Department makes only one determination of DSH status eligibility. Therefore, the issue becomes whether Riveredge may correct its "error in calculation" through the Department's review procedure, which provides:

> "Hospitals shall be notified of their qualification for DSH payment adjustments and shall have an opportunity to request a *review of the DSH add-on* for errors in calculation. Such a request must be received *** within 30 days after the date of the Department's notice to the hospital of its disproportionate share qualification and *add-on calculations.* Such request shall include a clear explanation of the error and documentation of the desired correction." (Emphasis added.) 89 Ill. Adm. Code § 148.310(b)(1) (Conway Greene CD-ROM September 1999).

We reject Riveredge's interpretation of this review procedure as providing a "substantive review" of the DSH determination for "errors in calculation." Section 148.310(b)(1) clearly provides review only of the Department's add-on calculation. Further, the review procedure in section 148.310(b)(1) applies only after the Department determines a hospital qualifies for DSH payment adjustments and calculates the add-on amount. Finally, Riveredge's interpretation is inconsistent with related regulations, which limit review of the DSH determination to verification the Department used criteria in accordance with State regulations (89 Ill. Adm. Code § 148.310(b)(2)(A) (Conway Greene CD-ROM September 1999)) and limit review of the low-income utilization rate to verification it is calculated in accordance with federal and State regulations (89 Ill. Adm. Code § 148.310(b)(2)(C) (Conway Greene CD-ROM September 1999)).

We disagree with Riveredge's contention the Department's inter-

pretation deprives hospitals of any meaningful review of the DSH determination. Sections 148.310(b)(2)(A) and (b)(2)(C) allow substantive review of the Department's DSH determination and low-income utilization rate calculations for compliance with regulations. However, these review procedures provide for verification only, not a second determination.

## III. CONCLUSION

For the reasons stated, we affirm the circuit court's judgment.

Affirmed.

STEIGMANN, P.J., and McCULLOUGH, J. concur.