EMMANUEL C. IKPOH, Plaintiff-Appellee, v. THE DEPARTMENT OF PROFESSIONAL REGULATION, Defendant-Appellant.

First District (6th Division)   No. 1—02—0906

Opinion filed May 2, 2003.—Rehearing denied June 3, 2003.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi and Jan E. Hughes, Assistant Attorneys General, of counsel), for appellant.

Law Offices of Alan Rhine, of Chicago (Alan Rhine, of counsel), for appellee.

JUSTICE GALLAGHER delivered the opinion of the court:

The defendant, the Illinois Department of Professional Regulation (the Department), appeals from a judgment of the circuit court of Cook County that granted a writ of prohibition enjoining the Department from holding further hearings to suspend, revoke or otherwise discipline the medical license of plaintiff Emmanuel Ikpoh (Ikpoh) which had previously been revoked and further ordered the Department to dismiss the administrative action pending against Ikpoh. We reverse.

## BACKGROUND

On August 2, 1990, the Department summarily suspended Ikpoh's medical license for immoral and unprofessional conduct. In November 1991, the Department revoked Ikpoh's medical license for a minimum of five years on grounds of his felony conviction for criminal sexual abuse of a 13-year-old minor and other sexual misconduct with his patients.

In February 1996, Ikpoh filed a petition to restore his license. In his petition, Ikpoh stated that no medical license issued to him by another state had ever been disciplined or challenged and that he had not been arrested or convicted since the time his Illinois license was disciplined.

In October and November 1996, a hearing was held before the Department's administrative law judge, Philip S. Howe (ALJ Howe), on Ikpoh's petition for restoration. Shortly thereafter, on January 8, 1997, ALJ Howe recommended to the Department's Medical Disciplinary Board (the Board) that Ikpoh's petition be denied. Shortly thereafter, on February 19, 1997, the Board adopted ALJ Howe's decision and recommended to the Director of the Department, Nikki Zollar (Director Zollar), that Ikpoh's petition be denied. The Board based its recommendations on several factors, including the following:

(1) that Ikpoh did not make full restitution to the female victim;

(2) that Ikpoh showed no contriteness and was not credible, but instead argumentative;

(3) that Ikpoh did not submit a current psychological evaluation to show that he was sufficiently rehabilitated;

(4) that Ikpoh did not provide sufficient evidence of qualitative and quantitative rehabilitation; and

(5) that Ikpoh did not disclose on certain application forms his felony conviction for criminal sexual abuse and his Illinois license revocation.

Upon receipt of the 20-day notice informing him that the Board recommended denial of his petition, Ikpoh filed a motion for rehearing. During the time that Ikpoh's motion for rehearing was pending, two events occurred. The first event occurred on August 7, 1997, when the Medical Licensing Board of Indiana placed Ikpoh's Indiana medical license on indefinite suspension. The second event took place on August 26, 1997, when Ikpoh was arrested by the police department of Bartlett, Illinois, on the felony charge of failing to register as a convicted sex offender. Ikpoh took no action after August 7, 1997, to inform the Illinois Department about the Indiana suspension and took no action to correct the then-false statement in his petition for restoration that no license to practice medicine in another state had been disciplined. In addition, Ikpoh failed to take any action after August 26 to inform the Department of his arrest and took no action to correct the then-false statement that he had not been arrested since the time his Illinois license was disciplined. On September 11, 1997, presumably unaware that these events had transpired while Ikpoh's motion for rehearing was pending, Director Zollar rejected the Board's recommendation that Ikpoh's petition for restoration of his license be denied and ordered that Ikpoh's license be restored subject to certain conditions.

On September 12, 1997, a grand jury indicted Ikpoh for his alleged crime. On or about September 17, 1997, the Department learned of Ikpoh's arrest and subsequently learned of his indictment. As a result, on September 19, 1997, the Department filed with the Director a motion to supplement the record and vacate her order of September 11, 1997. On the same day, finding that Ikpoh's arrest for failure to register as a felon convicted of sexual abuse may pose an immediate danger to the public and that Ikpoh's arrest and indictment for failure to register as a felon convicted of sexual abuse was newly discovered evidence that was relevant to the petition for restoration, the Director granted the Department's motion and vacated her September 11, 1997, decision. She remanded the case to the ALJ and ordered that an additional hearing be held.

On December 15, 1997, prior to the start of the supplemental administrative hearing ordered by Director Zollar, the Department filed a nine-count administrative complaint, with the administrative case number of 1997-51323, against Ikpoh. In March 1998, Ikpoh's motion to dismiss the complaint was denied. In August 1999, the Department filed an amended complaint, adding an additional count.

The counts contained in the amended complaint can be summarized as follows:

Count I: On August 7, 1997, Ikpoh's Indiana medical license was indefinitely suspended;

Count II: Ikpoh failed to report the Indiana discipline;

Count III: Ikpoh's failure to report that discipline while his petition for restoration was pending constitutes fraud and misrepresentation;

Count IV: The allegations contained in count II also constitute dishonorable conduct;

Count V: Ikpoh's failure to report his August 26, 1997, arrest during the pendency of his petition for restoration constitutes fraud and misrepresentation;

Count VI: The allegations contained in count V also constitute dishonorable conduct;

Count VII: In December 1995, Ikpoh was terminated from an Indiana health care institution due to multiple charges of sexual harassment from staff and an incident endangering the life of a patient, and Ikpoh failed to report this adverse action to the Department;

Count VIII: Ikpoh misrepresented his status in his petition for restoration where he claimed that he had "successfully engaged" in the practice of medicine outside the State of Illinois, but failed to mention his termination from the Indiana health care institution;

Count IX: The allegations contained in count VIII also constitute dishonorable conduct; and

Count X: On June 8, 1999, Ikpoh was convicted of attempted obstruction of justice by failing to register as a sex offender, which constitutes dishonorable, unethical, or unprofessional conduct.

Ikpoh filed a motion to dismiss the amended complaint. On April 10, 2001, administrative law judge Shari Dam (ALJ Dam) granted Ikpoh's motion to dismiss counts V, VI, VII, VIII, and IX on the basis of *res judicata* because those allegations had been previously litigated in the hearing on Ikpoh's petition for restoration. ALJ Dam denied Ikpoh's motion to dismiss counts I, II, III, IV, and X, finding that those counts were drafted with sufficient detail.[1] ALJ Dam also rejected Ikpoh's argument that the Department lacked jurisdiction over a license that had been revoked. ALJ Dam set the matter for status on May 21, 2001.

---

[1]The Department notes in its brief, however, that the status of count IV is unclear because ALJ Dam ordered the count stricken because the Department failed to specify the ethical standard that the Department alleged Ikpoh violated, but ALJ Dam also ordered Ikpoh to file an answer to count IV.

On May 18, 2001, Ikpoh filed the underlying action in the circuit court, which is the subject of this appeal. On February 20, 2002, the court entered the order granting Ikpoh's motion for summary judgment. The trial court concluded that the Medical Practice Act of 1987 (225 ILCS 60/2 *et seq.* (West 2000)) "does not grant any authority to the Department to take action against a person to revoke his license when that license has already been revoked." The court issued a writ of prohibition enjoining the Department from holding additional hearings in the case and further ordered the Department to dismiss the administrative action pending against Ikpoh. The Department filed a timely notice of appeal.

## ISSUE PRESENTED FOR REVIEW

■ The issue we decide here is whether the Illinois Department of Professional Regulation has the authority[2] to hold a hearing to consider a complaint seeking discipline of a medical license for alleged violations of the Medical Practice Act of 1987 (225 ILCS 60/2 *et seq.* (West 2000)) (the Act) where the license has already been revoked for prior statutory violations. The relevant provisions of the Act are section 22 (225 ILCS 60/22 (West 2000)) and section 43 (225 ILCS 60/43 (West 2000)). Section 22 of the Act provides as follows:

"The Department may revoke, suspend, place on probationary status, or take any other disciplinary action as the Department may deem proper with regard to the license *** of any person issued under this Act to practice medicine[.]" 225 ILCS 60/22 (West 2000).

Section 43 of the Act states:

"At any time after the suspension, revocation, placing on probationary status, or taking disciplinary action with regard to any license, the Department may restore it to the accused person, or take any other action to reinstate the license to good standing, without examination, upon the written recommendation of the Disciplinary Board." 225 ILCS 60/43 (West 2000).

## STANDARD OF REVIEW

■ The cardinal rule of statutory interpretation is that a court must ascertain and give effect to the intent of the legislature. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76,

---

[2]This court has previously explained that the terms "jurisdiction" and "authority" have been used interchangeably in reference to an administrative body's authority to act. *Gilchrist v. Human Rights Comm'n*, 312 Ill. App. 3d 597, 601, 728 N.E.2d 566, 570 (2000), citing *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243-44, 555 N.E.2d 693, 716-17 (1989).

91, 606 N.E.2d 1111, 1118 (1992). The statute's plain language provides the best indication of the legislature's intent. *Yang v. City of Chicago*, 195 Ill. 2d 96, 103, 745 N.E.2d 541, 545 (2001). We evaluate the statute as a whole, construing each provision in connection with every other section. *Abrahamson*, 153 Ill. 2d at 91, 606 N.E.2d at 1118. This court affords *de novo* review to decisions involving questions of law such as the interpretation of a statute. *Yang*, 195 Ill. 2d at 103, 745 N.E.2d at 545. Nevertheless, although this court is not bound by an administrative agency's interpretation of a statute, we recognize that where an agency is charged with the administration and enforcement of a statute, the agency is in a good position to make informed judgments upon the issues, based on its experience and expertise. *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 398, 634 N.E.2d 712, 715 (1994). As a result, we may accord some deference to an agency's interpretation of its enabling statute. *Bailey & Associates, Inc. v. Department of Employment Security*, 289 Ill. App. 3d 310, 316, 683 N.E.2d 1204, 1208 (1997); *Morse v. Department of Professional Regulation*, 316 Ill. App. 3d 664, 667, 737 N.E.2d 678, 680 (2000).

## ANALYSIS

The Department contends that the plain language of section 22 of the Act unambiguously provides the Department with the authority to discipline a license that is already revoked. We agree.

■ Section 22 confers broad authority to discipline licenses with its language providing that the "Department may revoke, suspend, place on probationary status, *or take any other disciplinary action as the Department may deem proper.*" (Emphasis added.) 225 ILCS 60/22 (West 2000). More specifically, the Department may take disciplinary action "with regard to the *license* *** of any person.*" (Emphasis added.) 225 ILCS 60/22 (West 2000). The legislature's use of the phrase "license *** of any person" does not limit the Department's authority to discipline only those physicians currently holding active or undisciplined licenses. The plain language unambiguously provides the Department with the authority to proceed with the disciplinary action against Ikpoh.

■ Ikpoh does not challenge the authority of the Department to discipline a license, nor does he contend that the language of the Act is ambiguous. Instead, he contends that his license no longer exists. He asserts that his license was "annulled or canceled" when it was revoked and, therefore, "there is no license to take action against." The trial court agreed with Ikpoh. As the Department correctly notes, however, had the General Assembly meant to limit the Department's authority in the manner found by the trial court, it could have stated

that the Department may take disciplinary action only against "a valid, existing license" or "an active license" or a "physician licensed under this Act," a license in "good standing," or a license that is "valid and in full force and effect," just as the legislature used those terms elsewhere in the Act. See 225 ILCS 60/3 (West 2000) (referring to "a valid, existing license" and "an active license"); 225 ILCS 60/38 (West 2000) (referring to a "physician licensed under this Act"); 225 ILCS 60/43 (West 2000) (referring to a license in "good standing"); 225 ILCS 60/48 (West 2000) (referring to licenses that are "valid and in full force and effect"). The legislature, however, did not restrict the language of section 22 in any such manner.

Courts must not depart from a statute's plain language by reading into it exceptions, limitations, or conditions the legislature did not express. *Lawrence v. Regent Realty Group, Inc.*, 197 Ill. 2d 1, 10, 754 N.E.2d 334, 339 (2001). There is nothing in the plain language of the Act that would limit the meaning of "the license *** of any person" to except the license of any person who has temporarily lost the privilege of practicing medicine because the license is revoked. Section 22 does not distinguish between physicians actively practicing and those whose licenses are revoked or otherwise disciplined. The circuit court erred in straying from the plain language of the statute and reading into the statute limitations not intended by the legislature.

Moreover, as noted earlier, this court evaluates a statute as a whole, construing each provision in connection with every other section. *Abrahamson*, 153 Ill. 2d at 91, 606 N.E.2d at 1118. Section 43 of the Act provides that "[a]t any time after the suspension, revocation, placing on probationary status, or taking disciplinary action with regard to any license, the Department may restore it to the accused person, or take any other action to reinstate the license to good standing, without examination, upon the written recommendation of the Disciplinary Board." 225 ILCS 60/43 (West 2000). When sections 22 and 43 of the Act are read in *pari materia*, it is clear that a license still existed which the Department had the authority to discipline. The very fact that the Department may restore a revoked license and that Ikpoh himself petitioned the Department to restore his license without examination refutes the premise of Ikpoh's contention that his license no longer exists. Ikpoh's contention on appeal that "a revoked license requires that the person make application anew" relies on an out-of-state case and is an inaccurate statement of Illinois law. In view of the fact that section 43 of the Act provides that the Department may "restore" or "reinstate" the license, *as well as* the fact that Ikpoh himself petitioned, there is no basis for his argument that his license has become a nullity. Contrary to the trial court's conclusion, the

Department's contention that Ikpoh's license was in "revoked status" was not a "word manipulation" but, rather, was a correct statutory interpretation. Because Ikpoh's license was revoked for a *minimum* of five years, it did not cease to exist.

Although it is the judgment of the lower court that is on appeal to the reviewing court and not what else may have been said by the lower court (*Material Service Corp. v. Department of Revenue*, 98 Ill. 2d 382, 387, 457 N.E.2d 9, 12 (1983)), we nonetheless believe it would be instructive to further address an issue that appeared to play a role in the trial court's decision. During the hearing on the parties' cross-motions for summary judgment, Ikpoh's pending petition to restore his license was discussed by the trial court. Indeed, the trial court stated that it thought that "the substance of these new charges can be very well addressed in the context of [Ikpoh's] petition to restore now pending or any other petition to restore." We do not believe that the intent of the legislature, in providing that the Department may restore, was to prohibit the Department from proceeding to discipline a license in revoked status until a person petitions for its restoration.

It is undisputed that the purpose of the Medical Practice Act was to protect the public health and welfare from those not qualified to practice medicine. See, *e.g.*, *Carter-Shields v. Alton Health Institute*, 201 Ill. 2d 441, 458, 777 N.E.2d 948, 958 (2002), quoting *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 330, 538 N.E.2d 1140, 1145 (1989) ("The Medical Practice Act 'regulat[es] medical professionals in order to protect the public welfare' "); *Metz v. Department of Professional Regulation*, 332 Ill. App. 3d 1033, 1036, 773 N.E.2d 1234, 1237 (2002); *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 764, 718 N.E.2d 217, 228 (1999); see also 20 ILCS 2105/2105—10 (West 2000) ("Legislative declaration of public policy. The practice of the regulated professions, trades, and occupations in Illinois is hereby declared to affect the public health, safety, and welfare of the People of this State and in the public interest is subject to regulation and control by the Department of Professional Regulation").

In challenging the Department's jurisdiction, Ikpoh notes that neither section 22 nor any other statute expressly grants the Department the authority to discipline a "revoked license." The Department notes, however, that it should come as no surprise to counsel for Ikpoh that the Department's authority to act can arise by "fair implication and intendment from *** express [statutory] provisions, as an incident to achieving the objectives for which the agency was created." *Albazzaz v. Department of Professional Regulation*, 314 Ill. App. 3d 97, 104, 731 N.E.2d 787, 793 (2000) (Ikpoh's counsel represented Albazzaz,

whose license was suspended for the unethical and immoral treatment of female patients). As the Department correctly notes, in addition to *Albazzaz*, this court has upheld actions taken by the Department based on the well-settled principles that administrative agencies have both express and implied powers to do all that is reasonably necessary to accomplish statutory objectives, and not every agency power must be explicitly articulated in the governing statute. See, *e.g.*, *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 63-64, 739 N.E.2d 57, 61-62 (2000) (Department has authority to file a motion requesting that the Director take action contrary to the Board's recommendation); *Gersch v. Department of Professional Regulation*, 308 Ill. App. 3d 649, 658-59, 720 N.E.2d 672, 680 (1999) (Department's authority to cancel an invalid license may be implied from the Act); *Smith v. Department of Professional Regulation*, 202 Ill. App. 3d 279, 289, 559 N.E.2d 884, 891 (1990) (Department's authority to appoint advisor to assist it is implied in its statutorily granted powers). Administrative agencies must be given wide latitude to accomplish their duties. *Lake County Board of Review v. Property Tax Appeal Board*, 119 Ill. 2d 419, 428, 519 N.E.2d 459, 463 (1988). Thus, although the Act does not *explicitly* state that the Department has the authority to discipline a revoked license, the Department has the implied power to do so under the Act.

Our research has disclosed cases from other jurisdictions challenging the authority or jurisdiction of a licensing board to take any action against a licensee unless his or her license is current or active. While none of these cases was factually similar to the instant case and involved statutes of other states, the reasoning and principles expressed in these cases is as relevant to the situation in the instant case where a license is revoked, yet the former licensee has the option of petitioning for restoration of the license.

In *Wang v. Board of Registration in Medicine*, 405 Mass. 15, 537 N.E.2d 1216 (1989), a physician challenged the board's jurisdiction because his license had expired before the board initiated proceedings against him. A state statute authorized the board to " 'investigate all complaints relating to the proper practice of medicine by any person holding a certificate of registration.' " *Wang*, 405 Mass. at 18, 537 N.E.2d at 1218, quoting Mass. Gen. Laws ch. 112, § 5 (1985). The Massachusetts Supreme Court noted that even though the physician failed to renew his license and it was automatically revoked, it could be revived upon completion of the renewal process. *Wang*, 405 Mass. at 18, 537 N.E.2d at 1218. Thus, the *Wang* court concluded that, under the Massachusetts statutory scheme, the agency retained jurisdiction over the physician. *Wang*, 405 Mass. at 19, 537 N.E.2d at 1219. The

*Wang* court held that even though the physician did not have a license that could be revoked, the board had jurisdiction to revoke his "inchoate right to reestablish his status as a licensed physician in Massachusetts simply by completing the renewal process." *Wang*, 405 Mass. at 19, 537 N.E.2d at 1219.

In *Wang*, the physician argued that the board could have waited to initiate proceedings against him until he filed an application for renewal. This position is similar to the statements of the trial court in the instant case regarding the possibility that the Department could address its charges when Ikpoh files a petition for restoration. In rejecting the argument, the *Wang* court reasoned:

> " '[I]t is logical and sensible that, where such grave charges of ... unprofessional or dishonorable conduct are alleged, the Board has the right to preserve [any] evidence ... of these charges; otherwise *witnesses may disappear and the passage of time itself may well dim or even eradicate the memory of the witnesses and thus preclude the construction of an adequate record.'* [Citation.]" (Emphasis added.) *Wang*, 405 Mass. at 20, 537 N.E.2d at 1219.

In *Boedy v. Department of Professional Regulation*, 433 So. 2d 544 (Fla. 1983), the court considered a similar issue of whether the Board had jurisdiction to discipline a doctor who had voluntarily deactivated his license. The court, in affirming the Board's denial of the doctor's motion to dismiss for lack of jurisdiction, rejected the doctor's argument that the state had "no legitimate interest in assuring that non-practicing physicians are able to practice with reasonable skill and safety." *Boedy*, 433 So. 2d at 544. The court agreed with the Board's reasoning, which was as follows:

> "This argument overlooks the fact that a licensee can reactivate his license at his own volition and to suggest that physicians should be able to immunize themselves from prosecution by simply going inactive suggests a form of self-regulation of the medical profession which was obviously rejected by the Legislature when it chose to enact Chapter 458, Florida Statutes. To permit a licensee to indefinitely hide behind an inactive status while *evidence is lost, witnesses disappear and memory is eradicated* serves no useful public interest." (Emphasis added.) *Boedy*, 433 So. 2d at 544.

Similar to the physicians in *Wang* and *Boedy*, a physician whose license is revoked in Illinois can petition the Department to restore his or her license at any time after the minimum term of the discipline. The Department should not have to wait until the physician seeks restoration of his or her license to initiate disciplinary proceedings to prosecute a subsequent violation of the Act. By the time the physician is eligible to petition for restoration or decides to do so, evidence might be lost or destroyed, witnesses may disappear, memories may

fade and statutes of limitation may expire.[3] The legislature could not have intended for the Department to disregard known violations of the Act simply because the physician's license is revoked. Indeed, the Department's investigative and prosecutorial duties are especially crucial in the situation where a person violates the Act during the time his license is disciplined for committing prior violations. We agree with the Department that it would be illogical to treat these "second offenders" better than any other physician who violates the Act by permitting their alleged violations to go unaddressed. Ikpoh should not be permitted to indefinitely hide behind an inactive status while evidence is lost or destroyed, witnesses disappear, memories fade and the statute of limitations expires.

In accordance with the foregoing, we reverse the judgment of the circuit court of Cook County. We remand this matter to the Illinois Department of Professional Regulation for further proceedings consistent with this opinion.

Reversed; cause remanded to the Illinois Department of Professional Regulation.

O'BRIEN, P.J., and O'MARA FROSSARD, J., concur.

---

[3]The Department must commence its prosecution within either three years or five years after the alleged incident or notice of the violation, depending on the grounds for discipline. 225 ILCS 60/22 (West 2000)).