SIXTH DIVISION

July 19, 2002

No. 1--01--2349

JAN METZ, ) Appeal from the

) Circuit Court of

Plaintiff-Appellant, ) Cook County.

)

v. ) No. 01 CH 9126

)

THE DEPARTMENT OF PROFESSIONAL REGULA- )

TION, and LEONARD A. SHERMAN, Director )

of the Department of Professional )

Regulation, ) The Honorable

) John K. Madden,

Defendants-Appellees. ) Presiding Judge.

JUSTICE BUCKLEY delivered the opinion of the court:

The plaintiff Jan Metz, brought an action for declaratory judgment and administrative review to challenge an order entered by the director of the Department of Professional Regulation suspend-ing Metz's license to practice as a physician and surgeon.  Metz unsuccessfully petitioned the circuit court for a stay of the order pending administrative review and now brings this interlocutory appeal to contest the circuit court's decision. 

The sole issue on appeal is whether the circuit court abused its discretion by refusing to stay the administrative order sus-pending Metz's license to practice as a physician during the pen-dency of the administrative review action challenging the order's validity.

I.  STATEMENT OF FACTS

In 1998, plaintiff Jan Metz, a physician licensed to practice medicine in Illinois, entered into a consent order (the Consent Order) with the Illinois Department of Professional Regulation (the Department).  The Consent Order recited the following:

"Information has come to the attention of the Department that [Metz] has a long history of alcohol and substance abuse.  It is further alleged that [Metz] engaged in non-therapeutic self-prescribing of controlled substances and that he issued prescriptions in the names of other individuals, appropriating the medica-tion for his own use."  

The Consent Order further alleged that Metz had been charged with various violations of Illinois law and that each of the charges was subsequently dismissed.  The allegations, if proven true, would constitute grounds for suspending or revoking Metz's license pursuant to section 22(A) of the Medical Practice Act of 1987 (225 ILCS 60/22(A) (West 2000)) and sections 102(u) and 312(h) of the Illinois Controlled Substances Act (720 ILCS 570/102(u), 312(h) (West 1996)).  As a result of the allegations, the Department held a disciplinary conference.  To resolve the matter, Metz agreed to several conditions, as set forth in the Consent Order, and waived his right to a hearing and administrative review of the order.

Under the Consent Order, Metz agreed to a six-month suspension of his physician and surgeon license, followed by an indefinite probation period of at least five years.  Metz also agreed to the various disclosure requirements relating to his participation in a drug treatment program, as well as the following:

"[Metz] shall cause the Department to be notified immediately in the event his treating physician determines that he has sustains [
sic
] a relapse of his substance abuse.  If [Metz] sustains a relapse of substance abuse, his Physician and Surgeon license shall be indef-initely and automatically Suspended, without Notice or Hearing, for a minimum period of one (1) year."

On May 29, 2001, Leonard Sherman, the Department's director, issued an order indefinitely suspending Metz's license to practice as a surgeon and physician in Illinois (the Suspension Order).  The Suspension Order recited that Metz was subject to the Consent Order (which was attached to the Suspension Order as exhibit A) and to the above condition regarding automatic and indefinite suspension.  The Suspension Order further asserted  that Metz "admitted that he fraudulently obtained and used the Controlled Substance Hydroco-dene."  In support of the last assertion, the director referred to an affidavit from Dan Murphy, a medical investigator with the Department, wherein Murphy stated that Metz "admitted to me that he fraudulently obtained and used the Controlled Substance Hydrocodene while under the auspices of the Illinois Health Professional Pro-gram."  The affidavit was attached to the Suspension Order as exhibit B.

In response to the Suspension Order, Metz filed a two-count complaint.  Count I was brought under the declaratory judgment act (735 ILCS 5/2-701 
et  seq.
 (West 1996)) and sought a declaration as to whether the Department had jurisdiction and/or authority to enter the Suspension Order.  Count II was brought under the Administra-tive Procedure Act (735 ILCS 5/3-101 
et  seq
.
 (West 2000)) and alleged that the Suspension Order was contrary to law because it was not based upon "expert opinion evidence regarding whether [Metz] sustained a relapse of substance abuse," and because Metz was not given a presuspension hearing.  

Metz also filed a motion for a preliminary injunction and/or stay of the Suspension Order pending administrative review.  Metz alleged that the Suspension Order was illegal and that he would suffer irreparable harm if his license was suspended during the pendency of the review proceedings.

After a hearing, the circuit court denied Metz's motion citing "public policy considerations."  Metz filed a timely notice of appeal.

II.  DISCUSSION

A.  Standard of Review

Section 3-111(a)(1) of the Administrative Review Law gives the circuit court broad discretion to stay an administrative decision pending review.  735 ILCS 5/3-111(a)(1) (West 2000).   Given this broad discretion, our standard of review is highly deferential and the circuit court's decision to grant or deny a stay will be reversed only upon a finding of abuse of discretion.  See 
Marsh v. Illinois Racing Board
, 179 Ill. 2d 488, 498 (1997). 

B.  Denial of the Stay

Pursuant to section 3-111(a)(1) of the Administrative Review Law, the circuit court has power:

"with or without requiring bond ***, and before or after answer filed, upon notice to the agency and good cause shown, to stay the decision of the administrative agency in whole or in part pending the final disposition of the case."  735 ILCS 5/3-111(a)(1) (West 2000).

The party seeking the stay must establish "good cause" by showing "(i) that an immediate stay is required in order to preserve the status quo without endangering the public, (ii) that it is not contrary to public policy, and (iii) that there exists a reasonable likelihood of success on the merits."  735 ILCS 5/3-111(a)(1) (West 2000).  The trial judge's order recited that he denied Metz' motion for a stay for "public policy reasons."  

Metz argues that "[i]t was an abuse of discretion for the circuit court to rely upon public policy when there is no reference to any authority setting such a policy."

"Questions of public policy *** are ultimately left for resolution by the courts."  
American Federation of State, County & Municipal Employees v. Department of Central Management Services
, 173 Ill. 2d 299, 318 (1996).  To ascertain the existence of a public policy, we look to our constitution, statutes, and relevant judicial opinions.  See 
American Federation
, 173 Ill. 2d at 308.  Illinois courts have recognized our state's public policy of protecting the physical health and safety of its citizens.  See 
Chicago Steel Rule & Die Fabricators Co. v. ADT Security Systems, Inc.
, 327 Ill. App. 3d 642, 647-48 (2002).  Our public policy of promoting and protecting the health, safety, and welfare of Illinois citizens has been expressly recited by our legislature.  See 70 ILCS 705/1 (West 1998).  

With respect to the Medical Practice Act, our supreme court has noted that "the State has a legitimate interest in regulating medical professionals in order to protect the public welfare."  
Potts v. Illinois Department of Registration & Education
, 128 Ill. 2d. 322, 330 (1989).  Indeed, the purpose of the Medical Practice Act is to protect the public health and welfare from those not qualified to practice medicine.  See 
Siddiqu v. Illinois Department of Professional Regulation
, 307 Ill. App. 3d 753, 763 (1999). To that end, a physician may lose his license to practice in Illinois for, among other things, "[h]abitual or excessive use or abuse of drugs defined in law as controlled substances *** which results in the inability to practice with reasonable judgment, skill or safety" or "self-administering any drug classified as a controlled substance *** for other than medically accepted therapeutic purposes."  225 ILCS 60/22(A)(7), (A)(17) (West 2000).

Here, the Consent Order recited that Metz has "a long history of alcohol and substance abuse."  The record also contains an affidavit from a Department medical investigator indicating that Metz admitted to "fraudulently obtain[ing] and us[ing]" a control-led substance within the period the Consent Order was in effect.  In light of this evidence, and in light of the public policy of Illinois, Metz cannot establish "good cause" for staying the suspension of his license to practice medicine pending administra-tive review because to do so would be contrary to public policy.  Accordingly, we conclude that the trial court did not abuse its discretion in denying Metz's motion for a stay.

Because it is sufficient to affirm the denial of Metz's motion for a stay based on public policy reasons, we need not consider Metz's likelihood of success on the merits in the administrative review action.  In order to establish "good cause," all of the elements recited in the statute must be met.  Therefore, even if there was a likelihood of success on the merits, that reason alone would be insufficient to reverse the trial court's denial of the stay as it would not lessen the overriding public policy concerns.

III.  CONCLUSION

Accordingly, we hereby affirm the trial court's order denying plaintiff's motion to stay the administrative order suspending plaintiff's license to practice medicine.

Affirmed.

Gallagher, P.J., and O'Brien, J., concur.