# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Parikh v. Division of Professional Regulation of the Department of Financial & Professional Regulation**, 2012 IL App (1st) 121226

---

| | |
|---|---|
| Appellate Court Caption | MAHESH PARIKH, Plaintiff-Appellant, v. THE DIVISION OF PROFESSIONAL REGULATION OF THE DEPARTMENT OF FINANCIAL AND PROFESSIONAL REGULATION, and JAY STEWART, Director of the Division, Defendants-Appellees. |
| District & No. | First District, Third Division<br>Docket No. 1-12-1226 |
| Rule 23 Order filed<br>Rule 23 Order withdrawn<br>Opinion filed | August 15, 2012<br><br>September 13, 2012<br>September 19, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The denial of plaintiff neurologist's emergency motion to stay an order directing that his medical license be suspended for a minimum of one year was not an abuse of discretion where plaintiff failed to properly argue that granting the stay would not be contrary to public policy, and he failed to show that there was a reasonable likelihood he would succeed in challenging the complaint that he had engaged in unprofessional conduct while treating a patient. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 12-CH-10974; the Hon. Franklin Valderrama, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| Counsel on Appeal | Winston & Strawn LLP (James R. Thompson, Matthew R. Carter, and Scott M. Ahmad, of counsel), and Goldberg Law Group, LLC (Michael K. Goldberg, Robert A. Bauerschmidt, Stephanie A. Wolfson, and Jenna E. Milaeger, of counsel), both of Chicago, for appellant. |
| | Lisa Madigan, Attorney General, of Chicago (Michael A. Scodro, Solicitor General, and Brett E. Legner, Assistant Attorney General, of counsel), for appellees. |
| Panel | JUSTICE STEELE delivered the judgment of the court, with opinion. Presiding Justice Salone and Justice Neville concurred in the judgment and opinion. |

**OPINION**

¶ 1    Plaintiff, Mahesh Parikh, M.D., a neurologist, appeals an order of the circuit court denying a stay of an order issued by defendant Jay Stewart, Director of the Division of Professional Regulation (Director) of defendant Illinois Department of Financial and Professional Regulation (Department), indefinitely suspending his medical license for a minimum of one year. For the following reasons, we conclude that the circuit court did not abuse its discretion in denying the stay and affirm the circuit court's judgment.

¶ 2                                   BACKGROUND

¶ 3    The record in this interlocutory appeal does not contain the pleadings or the transcript of the proceedings before the Department. Dr. Parikh's complaint in administrative review states that the Department filed a complaint against him on October 29, 2010. The case proceeded to a hearing held over three days in June, August and September 2011.

¶ 4    On November 9, 2011, the administrative law judge (ALJ) issued a report and recommendations. The ALJ's report indicates that the Department charged Dr. Parikh with: (1) dishonorable, unethical and unprofessional conduct likely to deceive, defraud or harm the public; and (2) inappropriately touching the breasts and vagina of patient L.K. in the course of providing medical treatment in violation of the Medical Practice Act of 1987. See 225 ILCS 60/22(A)(5), (A)(20) (West 2010). Dr. Parikh denied all allegations of wrongdoing.

¶ 5    The ALJ found that it was undisputed that Dr. Parikh was licensed to practice in Illinois and practiced as a neurologist. Based on a Department exhibit, the ALJ found L.K. was a

patient under Dr. Parikh's care and treatment from December 12, 2008, through August 24, 2009, for migraine headaches, anxiety and joint pain.

¶ 6    The ALJ then summarized and assessed the testimony from seven witnesses, with references to pages of the hearing transcripts. Given the nature of the issues raised on appeal, we find it necessary to summarize portions of the ALJ's report.

¶ 7    According to the ALJ, L.K., a 21-year-old college student, testified that during her third visit to Dr. Parikh on March 20, 2009, she complained of breast tenderness along with other symptoms. With her permission to conduct a breast examination, Dr. Parikh stuck his hand down her shirt, using two or three fingers in a circular motion, and then squeezing her breasts with his hands and fingers. L.K. estimated Dr. Parikh touched her breasts for 30 seconds to a minute, first while she was sitting up then while she was lying down. He did not ask her to remove her shirt or bra, although he felt under both garments. No one else was present during the examination.

¶ 8    L.K. indicated that another breast examination occurred during a March 24, 2009, follow-up visit, although she had not complained of breast tenderness and he did not ask for permission. According to the ALJ, L.K. testified that similar incidents occurred during two subsequent visits in July 2009. L.K. further claimed that during another July 2009 visit, after conducting a breast exam, Dr. Parikh stuck his hand down her pants, underneath her underwear with two or three fingers, pushing into the area where she had pubic hair. L.K. felt uncomfortable about the examination, but trusted Dr. Parikh knew what he was doing.

¶ 9    L.K. was accompanied by her then-boyfriend, Brandon Olson, to another July 2009 visit[1] because she felt uncomfortable seeing Dr. Parikh. Brandon was in the room when Dr. Parikh stuck his hand under her shirt and bra to examine her breasts. Dr. Parikh did not ask Brandon to leave the room. Brandon appeared surprised and looked away from the examination.

¶ 10    Moreover, L.K. testified about an August 2009 visit in which Dr. Parikh conducted another breast examination and again stuck his hand down her pants. After receiving permission to continue, he pushed into the pubic area above her clitoris. He then conducted yet another breast examination and later stuck his hand up the leg of her shorts, touching her vaginal lips. After she told him this would be her last visit before returning to college, Dr. Parikh asked if he could hug her and gave her a "really squeezy bear hug." L.K. later told her mother, Tina, about the uncomfortable visit. Tina received L.K.'s permission to ask L.K.'s primary care physician whether the examinations were appropriate. L.K. testified that Tina later telephoned, very upset and crying, and told L.K. that the primary care physician recommended contacting the police.

¶ 11    On cross-examination, Dr. Parikh's counsel highlighted inconsistencies in L.K.'s statements to the police, including how many visits Tina attended and when the breast and vaginal examinations started. In addition, L.K. told police that when Brandon was present, Dr. Parikh did not ask for permission, while Brandon told police the opposite. She was also cross-examined about her relationship with Brandon, which ended in 2010. She was further

_____

[1]L.K. later clarified that she had only three visits with Dr. Parikh in July 2009.

cross-examined about the office blinds in the exam room; L.K. said they were closed, but did not recall whether Dr. Parikh closed them. L.K. conceded that she never asked Dr. Parikh to stop any of his examinations.

¶ 12      According to the ALJ, Brandon testified regarding a July 21, 2009, visit L.K. made to Dr. Parikh. Brandon testified he looked away out of respect for his then-girlfriend when Dr. Parikh's hand was starting to go down L.K.'s shirt toward the chest area. Brandon also stated Dr. Parikh's back was to him, so he could not see the examination. Brandon testified that L.K. had complained of breast tenderness and that Dr. Parikh asked permission to perform the examination. After the visit, L.K. asked whether Brandon thought the examination was strange. Brandon replied that he thought it was strange he was allowed to remain in the room, but told L.K. to trust Dr. Parikh because he was a doctor. Brandon testified about his prior relationship with L.K., confirming the two had not had intercourse. Brandon did not recall whether the office had blinds.

¶ 13      Tina testified she accompanied L.K. on a December 12, 2008, visit to Dr. Parikh. Tina left the office when it was apparent that L.K. was uncomfortable about answering Dr. Parikh's questions about her sexual history in front of her. Tina also testified regarding her August 24, 2009, telephone conversations with L.K. and L.K.'s primary care physician. Tina added they telephoned the police that evening and were interviewed separately by police at their home later that evening. The police asked them to delay filing a complaint with the Department while the police investigated, but the police shelved the investigation in October 2009.

¶ 14      Dr. Dane Michael Chetkovich, a board-certified neurologist, gave expert testimony for the Department. Dr. Chetkovich testified that typically, neither a breast nor a pelvic examination would be part of a neurological exam. Rather, if a breast or pelvic examination was indicated, a neurologist would refer the patient to a gynecologist or general practitioner. In the rare cases where a neurologist would be required to conduct a breast or pelvic exam, the doctor would document the reason for its necessity and report the results for diagnostic purposes. Dr. Chetkovich's description of a standard breast or pelvic exam differed from those described by L.K.

¶ 15      Based upon a review of L.K.'s medical records, Dr. Chetkovich opined that there was no clinical reason for Dr. Parikh to perform a breast or pelvic exam. Dr. Chetkovich also opined that the exams described by L.K. would be an inappropriate and unprofessional touching of L.K.'s breasts and pelvic area. Dr. Chetkovich further opined that if the allegations in the Department's complaint were true, Dr. Parikh failed to provide ethical care and treatment to L.K. Based upon the investigators' description of L.K.'s behavior and L.K.'s testimony, Dr. Chetkovich opined that L.K. was not savvy and did not know the things she described were wrong and that it took the repeated exams on the same day to make her suspicious.

¶ 16      Dr. Parikh testified both as an adverse witness and on his own behalf. Dr. Parikh stated that he was L.K.'s neurologist between December 2008 and August 2009. He maintained throughout his testimony that he did not perform breast or vaginal examinations on L.K., but acknowledged that he may have touched her clavicle. Dr. Parikh further maintained that

either Tina, Brandon or one of his office assistants was in the examination room for part of L.K.'s visits. Dr. Parikh stated his assistant Cynthia Monroe was present during the August 24, 2009, visit.

¶ 17    Dr. Parikh also called two of his office assistants to testify on his behalf. Monroe testified the examination room has blinds which are generally kept open. From where she sits in the office, Monroe can see into the examination room even when the door is closed, but cannot see past the corner of the examination table. She is always allowed to enter the examination room after knocking and does not wait for permission to enter. Dr. Parikh's other office assistant, Karen Hoff, gave substantially similar testimony on these points.

¶ 18    After reviewing the testimony and documentary evidence, the ALJ concluded that the Department failed to prove its charges by clear and convincing evidence. The ALJ found that L.K. testified in a calm and consistent manner, but with confusion on some points and demonstrated a naivety unusual for a woman of her age and educational background. The ALJ also found that her testimony was uncorroborated, except for Brandon's testimony regarding one visit. The ALJ found Brandon truthful, but unreliable, citing his testimony about the office blinds. The ALJ also questioned how Brandon could have observed Dr. Parikh stick his hand down L.K.'s shirt, given his testimony that Dr. Parikh's's body blocked Brandon's view of the exam. The ALJ further found Dr. Parikh testified credibly and calmly and his testimony was consistent with the medical records.

¶ 19    On December 21, 2011, the medical disciplinary board of the Department adopted the ALJ's findings of fact and conclusions of law in its recommendations to the Director.

¶ 20    On March 26, 2012, the Director issued an order determining the evidence was sufficient to prove by clear and convincing evidence the Department's charges against Dr. Parikh. The Director found that L.K.'s naivety did not dispel her clear and consistent testimony of the events occurring in Dr. Parikh's office on multiple occasions. The Director also found that Dr. Parikh testified he did not recall any of the office visits with L.K. with any specificity (citing numerous pages of the transcript), which lessened the weight of his denials in the face of the testimony from L.K. and Brandon. The Director further noted that Monroe and Hoff testified they did not recall being present for any of L.K.'s examinations (again citing the transcript). The Director further found Monroe's and Hoff's testimony should be given less weight in light of their employment by and financial dependence on Dr. Parikh. The Director added that he found no motive on the part of L.K. to fabricate her claims. Accordingly, the Director ordered that Dr. Parikh's medical license be indefinitely suspended for a minimum of one year.

¶ 21    The next day, Dr. Parikh filed a complaint for administrative review and an emergency motion for a stay of the Director's order in the circuit court. On March 29, 2012, the Department filed its response in opposition to the motion for a stay. On that same date, following a hearing on the matter, the circuit court denied the motion for a stay. On April 30, 2012, Dr. Parikh filed a timely notice of interlocutory appeal to this court.

DISCUSSION

¶ 23 I. Standards of Review

¶ 24 On appeal, Dr. Parikh argues the circuit court abused its discretion in denying his emergency motion for a stay from the Director's order. Pursuant to section 3-111(a)(1) of the Administrative Review Law:

> "(a) The Circuit Court has power:
>
> (1) with or without requiring bond (except if otherwise provided in the particular statute under authority of which the administrative decision was entered), and before or after answer filed, upon notice to the agency and good cause shown, to stay the decision of the administrative agency in whole or in part pending the final disposition of the case. For the purpose of this subsection, 'good cause' requires the applicant to show (i) that an immediate stay is required in order to preserve the status quo without endangering the public, (ii) that it is not contrary to public policy, and (iii) that there exists a reasonable likelihood of success on the merits[.]" 735 ILCS 5/3-111(a)(1) (West 2010).

The circuit court has broad discretion to stay an administrative decision pending review. *Marsh v. Illinois Racing Board*, 179 Ill. 2d 488, 498 (1997). Accordingly, our standard of review is highly deferential and the circuit court's decision to grant or deny a stay will be reversed only upon a finding of abuse of discretion. *Metz v. Department of Professional Regulation*, 332 Ill. App. 3d 1033, 1035 (2002). An abuse of discretion occurs only where " 'the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court.' " *Blum v. Koster*, 235 Ill. 2d 21, 36 (2009) (quoting *People v. Hall*, 195 Ill. 2d 1, 20 (2000)). A reviewing court looks to the sufficiency of the evidence only for the limited purpose of ascertaining whether the circuit court abused its discretion in entering the interlocutory order. *Certain Underwriters at Lloyd's, London v. Boeing Co.*, 385 Ill. App. 3d 23, 36 (2008). The party seeking the stay bears the burden of proving adequate justification for the relief sought. *Kenny v. Kenny Industries, Inc.*, 406 Ill. App. 3d 56, 65 (2010).

¶ 25 In this case, the transcript of proceedings in the circuit court shows the judge found in favor of Dr. Parikh on the first element required for a stay, but against him on the remaining factors. Accordingly, Dr. Parikh argues that the circuit court abused its discretion in finding the stay was contrary to public policy and there was not a reasonable likelihood of success on the merits. We address both arguments.

¶ 26 II. Public Policy

¶ 27 Initially, we note that Dr. Parikh's emergency motion for a stay did not argue that granting the stay was not contrary to public policy. A review of the transcript of the hearing on the motion shows the trial judge cautioned Dr. Parikh's counsel about arguing the merits of the case. The trial judge later specifically asked Dr. Parikh's counsel to address the first two elements necessary to obtain a stay. Dr. Parikh's counsel argued:

"[I]t's not against public policy, in that these stays happen from time to time. There is no policy–I'm not aware of any policy against it, and I guess it sort of merges with [the first element]. I mean, there is not going to be anything that endangers the public."

A statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous. *E.g.*, *C.E. v. Board of Education of East St. Louis School District No. 189*, 2012 IL App (5th) 110390, ¶ 6. Section 3-111(a)(1) of the Administrative Review Law requires the applicant for a stay to prove the three elements discussed herein. 735 ILCS 5/3-111(a)(1) (West 2010). Dr. Parikh's assertion that the first two elements merge would render the second element superfluous. Moreover, Dr. Parikh's suggestion that the effect of his suspension on his patients supports a public policy argument is incorrect. The purpose of the Medical Practice Act is to protect the public health and welfare from those not qualified to practice medicine. See *Metz*, 332 Ill. App. 3d at 1036. The trial judge properly considered the effect of Dr. Parikh's suspension on his patients as part of satisfying the first element of good cause necessary for a stay, while excluding it from a consideration of the second element.

¶ 28 In a footnote to his brief, Dr. Parikh suggests that the protection of his property interest in his medical license is a countervailing public policy consideration, but he failed to make that argument in the circuit court. Arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal. *Village of Roselle v. Commonwealth Edison Co.*, 368 Ill. App. 3d 1097, 1109 (2006). Accordingly, we agree with the trial judge's comment in the transcript that Dr. Parikh failed to prove the second element of good cause necessary to obtain a stay and that the trial judge did not need to address the third element.

¶ 29       III. Likelihood of Success on the Merits

¶ 30 However, as the trial judge did address the third element, we shall address it here. In order to obtain a stay, the burden falls on Dr. Parikh to show "at least a fair question as to the likelihood of success on the merits." (Internal quotation marks omitted.) *Markert v. Ryan*, 247 Ill. App. 3d 915, 917 (1993). Dr. Parikh argues he has met this burden regarding claims that: (1) the Director's order is against the manifest weight of the evidence; (2) he is likely to prevail on a due process claim; (3) the Director lacked legal authority to enter the order; and (4) the Director abused his authority in imposing an indefinite suspension of at least one year. We address these claims in turn.

¶ 31 The factual findings of an administrative agency are held as *prima facie* true and correct (735 ILCS 5/3-110 (West 2010)) and will not be disturbed on review unless the findings are against the manifest weight of the evidence. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). It is the final decision of the agency that is reviewed in an administrative review proceeding, and it is the agency's findings of fact that are entitled to deference, not the findings of a hearing officer or an ALJ. *Starkey v. Civil Service Comm'n*, 97 Ill. 2d 91, 100-01 (1983); *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57, 64-65 (2000); *Pundy v. Department of Professional Regulation*, 211 Ill. App. 3d 475, 486-87 (1991). This is true even when the agency's

findings differ from those of the ALJ and the agency has not had the opportunity to observe the witnesses. *Starkey*, 97 Ill. 2d at 101; *Wilson*, 317 Ill. App. 3d at 65; *Schmeier v. Chicago Park District*, 301 Ill. App. 3d 17, 30 (1998). In appeals from administrative review, it is not our function to reevaluate witness credibility or resolve conflicting evidence. *Morgan v. Department of Financial & Professional Regulation*, 374 Ill. App. 3d 275, 288 (2007).

¶ 32    Dr. Parikh's argument is based almost entirely on the manner in which the Director evaluated the credibility of and discrepancies in the testimony of the witnesses. Dr. Parikh relies heavily on *Coordinating Committee of Mechanical Specialty Contractors Ass'n v. O'Connor*, 92 Ill. App. 3d 318, 321-22 (1980), in which this court affirmed the granting of a stay based in part on alleged inconsistencies in the director's order and the opinion, findings of fact and recommendations of the hearing officer. *O'Connor* is distinguishable from the instant facts in at least two major aspects. First, in *O'Connor*, the burden was on the appellants to show that granting the stay was an abuse of discretion, whereas the burden here falls on Dr. Parikh to show the denial of the stay was an abuse of discretion. Second, *O'Connor* was decided before *Starkey* and its progeny made clear that an agency director is free to reject even the credibility determinations made by the hearing officer. See *Starkey*, 97 Ill. 2d at 100-01. Dr. Parikh may ultimately show that the Director's findings are against the manifest weight of the evidence. However, the mere fact that the Director weighed the conflicting evidence differently and made credibility assessments in disagreement with the ALJ does not show the circuit court abused its discretion in ruling Dr. Parikh failed to raise a fair question on the issue to obtain a stay pending review.

¶ 33    Dr. Parikh next argues he is likely to prevail on his substantive due process claim. " '[A] license to practice medicine is a 'property right,' within the meaning of the constitutional guarantees of due process of law.' " *Wilson v. Department of Professional Regulation*, 344 Ill. App. 3d 897, 907 (2003) (quoting *Smith v. Department of Registration & Education*, 412 Ill. 332, 340-41 (1952)). However, Dr. Parikh does not claim any procedural deficiency in his brief. Rather, he argues that the Director's decision is arbitrary and capricious because he ignored or disregarded the ALJ's findings. A review of the Director's order reveals that it explains his points of disagreement with the findings made by the ALJ. Accordingly, the circuit court did not err in rejecting a stay on this basis.

¶ 34    Dr. Parikh further argues that he is likely to prevail on his claim that the Director lacked legal authority to enter the order. The relevant provision of the Medical Practice Act provides in relevant part:

> "In all instances, under this Act, in which the Disciplinary Board has rendered a recommendation to the Director with respect to a particular physician, the Director shall, in the event that he or she disagrees with or takes action contrary to the recommendation of the Disciplinary Board, file with the Disciplinary Board *** his or her specific written reasons of disagreement with the Disciplinary Board. Such reasons shall be filed within 30 days of the occurrence of the Director's contrary position having been taken." 225

ILCS 60/44 (West 2010).[2]

Dr. Parikh argues that our decision in *Wilson v. Department of Professional Regulation*, 317 Ill. App. 3d 57 (2000), suggests that the Director's power under this statute only includes the power to impose a greater or lesser punishment than recommended by the medical disciplinary board, not to impose discipline when the board has found it unwarranted. However, in *Wilson*, there was "no question but that Wilson committed the offense that gave rise to the Department's disciplinary proceedings." *Id.* at 65. Thus, the issue of a Director's authority was not presented in *Wilson*, as occurs here.

¶ 35    As the Department correctly notes, the statute here contains no language limiting the Director's authority to disagree to questions of aggravation or mitigation. "It is a cardinal rule of statutory construction that we cannot rewrite a statute, and depart from its plain language, by reading into it exceptions, limitations or conditions not expressed by the legislature." *People ex rel. Birkett v. Dockery*, 235 Ill. 2d 73, 81 (2009). Accordingly, the circuit court did not err in rejecting a stay on this point.

¶ 36    Lastly, Dr. Parikh argues that he is likely to prevail on the claim that the Director abused his authority in imposing an indefinite suspension of at least one year. In this context, an abuse of discretion occurs only when the decision was either: (1) overly harsh in view of the mitigating circumstances; or (2) unrelated to the purpose of the statute. See *Kafin v. Division of Professional Regulation of the Department of Financial & Professional Regulation*, 2012 IL App (1st) 111875, ¶ 42 (and cases cited therein). Dr. Parikh argues the former, not the latter.

¶ 37    In *Kafin*, after reviewing similar reported cases, this court found the revocation of a psychiatric license to be an overly harsh punishment for engaging in a sexual relationship with a patient, where the team of psychiatrists who evaluated Kafin concluded that the plaintiff exhibited several key features of a narcissistic personality disorder and also determined that plaintiff would be fit to practice medicine, provided he complied with specific recommendations. *Kafin*, 2012 IL App (1st) 111875, ¶ 45. In this case, Dr. Parikh's supposed mitigation is an attack on the purportedly new Director and his disagreement with the findings of the ALJ. Notably, in *Kafin*, the ALJ and medical disciplinary board had recommended that Kafin's medical license be indefinitely suspended for at least three years and that he be fined $5,000. *Kafin*, 2012 IL App (1st) 111875, ¶ 25. The *Kafin* court also discussed *Reddy v. Department of Professional Regulation*, 336 Ill. App. 3d 350, 355 (2002), which affirmed a six-month suspension, and *Pundy*, 211 Ill. App. 3d at 488, which upheld a six-month suspension with a two-year probationary period. *Kafin*, 2012 IL App (1st) 111875, ¶¶ 43-50. Given the case law, including consideration of the initially recommended minimum three-year suspension at issue in *Kafin*, we conclude that the circuit court did not abuse its discretion in denying the stay on this point.

---

[2]Amended by Public Act 97-622, § 10 (eff. Nov. 23, 2011) to vest this authority in the Secretary of the Department. Dr. Parikh raises no issue in this litigation regarding the amendment.

¶ 38                                    CONCLUSION

¶ 39      In short, we conclude that the circuit court did not abuse its discretion in denying Dr. Parikh's emergency motion for a stay of the Director's order. Dr. Parikh failed to properly argue in the circuit court that granting the stay would not be contrary to public policy. Moreover, the circuit court did not abuse its discretion in ruling that Dr. Parikh failed to show a reasonable likelihood of success on the merits, based on the record then before the court. Accordingly, for all of the aforementioned reasons, the judgment of the circuit court of Cook County is hereby affirmed.

¶ 40      Affirmed.