2022 IL App (1st) 211530-U

THIRD DIVISION
March 2, 2022

No. 1-21-1530

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT
_____

| | | |
|---|---|---|
| SHAHID MASOOD, M.D., | ) | Appeal from the |
| | ) | Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 21 CH 05718 |
| DIVISION OF PROFESSIONAL REGULATION of the | ) | |
| ILLINOIS DEPARTMENT OF FINANCIAL AND | ) | |
| PROFESSIONAL REGULATION, and CECILIA | ) | |
| ABUNDIS, in her official capacity as ACTING | ) | |
| DIRECTOR of the DIVISION OF PROFESSIONAL | ) | |
| REGULATION, | ) | Honorable |
| | ) | David B. Atkins, |
| Defendants-Appellees. | ) | Judge Presiding. |

_____

JUSTICE McBRIDE delivered the judgment of the court.
Presiding Justice Gordon and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1   Held:   Denial of physician appellant's motion to stay the suspension of his medical licenses affirmed where appellant failed to provide a sufficient record to support his claim that the circuit court abused its discretion.

¶ 2   This is an interlocutory appeal from a circuit court order denying Plaintiff-Appellant Dr.

Shahid Masood's motion to stay the suspension of his medical licenses pending administrative

review. The Director of the Division of Professional Regulation of the Illinois Department of Financial and Professional Regulation ("Department") indefinitely suspended Masood's medical licenses for a minimum period of two years, finding that Masood excessively overprescribed controlled substances over extended periods of time to two patients with underlying substance abuse issues. The circuit court denied Masood's motion to stay that suspension, finding that a stay was not supported by public policy, and that Masood failed to establish a reasonable likelihood of success on the merits on administrative review. Masood appeals, arguing that the circuit court abused its discretion in denying his request for a stay.

¶ 3    The record shows that Masood is a physician holding a Physician and Surgeon License and a Controlled Substance License, both issued by the Department, an administrative agency tasked with licensing and regulating professions and trades, including physicians in Illinois. See 20 ILCS 2105/2105-1, et seq. (2020); 225 ILCS 60/1, et seq. (2020).

¶ 4    The Department filed an administrative complaint against Masood on August 18, 2017, and an amended administrative complaint thereafter, on March 4, 2019. Although copies of the complaint and amended complaint do not appear in the common law record filed on appeal, other filings in the record indicate that the amended complaint alleged four counts. Specifically, (1) that Masood prescribed very large amounts of several controlled substances—totaling more than 750,000 tablets over a two-year period—to multiple patients at his practice, including out of state patients; (2) that Masood engaged in improper care of patient S.J.; (3) that Masood improperly treated S.W., a registered nurse employed by Masood with a history of substance abuse, by prescribing her excessive quantities of controlled substances and failing to monitor her drug use; and (4) that Masood improperly treated patient M.S. by failing to evaluate him for warning signs of addiction and continuing to prescribe him excessive quantities of controlled substances.

2

¶ 5      The matter proceeded to a hearing over the course of several days before an administrative law judge (ALJ). At that hearing, the ALJ heard testimony from 10 witnesses and 17 exhibits were entered into evidence. Neither a transcript of the hearing, nor the exhibits, appear in the record on appeal.

¶ 6      Following the hearing, the ALJ issued an 89-page "Report and Recommendation," in which the ALJ extensively described the hearing and the evidence presented.  The ALJ noted that during the hearing, the Department withdrew the second count against Masood regarding patient S.J., and that the Department was given leave to supplement its complaint with another count alleging that Masood failed to comply with the Department's subpoena.

¶ 7      The ALJ found that the Department proved counts three and four, regarding his treatment of patients S.W. and M.S., by clear and convincing evidence. These charges alleged that Masood violated his duty of care and various provisions of the Medical Practice Act, 225 ILCS 60/1, *et seq*. (2020), as well as the Illinois Controlled Substances Act, 720 ILCS 570/100, *et seq.* (2020), when treating these two patients over extended periods of time. The ALJ found that by prescribing excessive quantities of controlled substances to these two patients, Masood breached the accepted standard of care, engaged in dishonorable and unethical conduct, and prescribed medication for uses other than those medically accepted. The ALJ noted that in 2018, the United States Drug Enforcement Administration (DEA) investigated Masood regarding his narcotic prescription practices, and the investigation ultimately resulted in him entering into a Memorandum of Agreement with the DEA that, among other things, restricted him from prescribing, administering, or dispensing Schedule II controlled substances for three years.

¶ 8      The ALJ found that Masood prescribed excessive amounts of controlled substances when treating S.W., a registered nurse with a history of substance abuse who worked at Masood's

practice. At the time Masood treated her, she was on probation with the Department as a result of her substance abuse. While the ALJ noted Masood's testimony that he was unaware of S.W.'s probation, the ALJ found Masood's testimony incredible. Over the course of nearly eight months, Masood repeatedly prescribed S.W. large quantities of Xanax (a Schedule IV benzodiazepine), OxyContin (a Schedule II opioid), Soma (a Schedule IV muscle relaxant), and Adderall (a Schedule II stimulant), totaling more than 400 tablets in any given month. The ALJ explained that the combination of a benzodiazepine, an opioid, and a muscle relaxer is known colloquially as "trinity," and is "used as an intoxicant" and "metabolized into a sedative barbiturate."

¶ 9    The ALJ then explained the testimony of the Department's expert, Dr. Asokumar Buvanendran, who had reviewed the medical records of S.W. Dr. Buvanendran testified that the records indicated S.W. complained of "minimal" and "non-specific" pain, and that the dosages prescribed were not consistent with the pain reflected in S.W.'s records. Dr. Buvanendran testified that Masood repeatedly prescribed a "very high dosage" that was "not clinically justified" for S.W.'s complaints. The ALJ further noted that on several occasions, the medical records reflected no discomfort or other pain, which the ALJ found strongly supported a conclusion that the medications administered were excessive.

¶ 10    The ALJ concluded that Masood was not prescribing medication for a medically accepted therapeutic purpose but rather with the intent to provide S.W. with sufficient controlled substances to maintain her "physical or psychological addiction to, habitual or customary use of, or dependence on" those controlled substances. The ALJ further found that the controlled substances were prescribed to S.W., "without *** necessary care or monitoring," noting Dr. Buvanendran's testimony that Masood deviated from his standard of care by not starting S.W. on the lowest quantity of opioids required, not consulting a pain management specialist, and not performing a

4

risk assessment before increasing the dosage—all particularly harmful given S.W.'s history of substance abuse.

¶ 11    Turning to the count alleging improper care of patient M.S., the ALJ found that Masood inappropriately prescribed controlled substances and breached his physician's responsibility in treating M.S., over the course of a decade. The ALJ noted that Masood began treating M.S., who resided in Toledo, Ohio, in 2009, and M.S. increased his treatment to monthly visits starting in 2012. Masood prescribed M.S. Xanax, OxyContin, and Percocet (a Schedule II opioid) each month. Between May 2016 and January 2018 alone, Masood authorized 1,890 tablets of Xanax, 1,260 tablets of OxyContin, 3,150 tablets of Percocet, and 150 tablets of Oxycodone. Masood also refilled prescriptions when M.S. claimed that his medications had been lost, stolen or destroyed on several occasions.

¶ 12    The ALJ then reviewed records of clinical notes, which indicated that in March 2017, M.S.'s daughter called Masood's practice and reported that she found her father unresponsive with "a packet of white powder." She further informed Masood that M.S. was involved in illegal drug activity, including selling his prescription drugs, and that he had multiple arrests for drug possession. She told Masood that M.S. "was a different person," that he had "no interest in anything anymore," and that M.S.'s house burned down while he was under the influence. She also informed Masood that M.S. took "the medications prescribed randomly. He takes many at one time and then none." In response, Masood wrote a letter to M.S., notifying him that he would no longer treat him.

¶ 13    Despite that letter, Masood continued to see M.S. for visits and continued to prescribe him controlled substances. At this time, Masood was prescribing him 150 tablets of Percocet, 60 tablets of OxyContin, and 90 tablets of Xanax on a monthly basis.

¶ 14    In December 2017, M.S.'s son contacted Masood and informed him that M.S. had overdosed and was in a behavioral drug treatment center. A few weeks later, M.S.'s daughter once again reached out to the practice, this time by e-mail, writing "with the intent to document" her continued attempts to inform Masood that M.S. was selling and abusing his prescription medications, and her belief that M.S. was "being overprescribed." In January 2018, Masood sent a letter to M.S. that his practice would no longer provide him services.

¶ 15    The ALJ agreed with Dr. Buvanendran's assessment that Masood missed many "red flags" regarding M.S., including that he traveled "hundreds of miles" from Ohio to see Masood, M.S.'s repeated "losses" of medication, and warnings from M.S.'s family. The ALJ found Masood's testimony that he believed M.S.'s excuses about his prescriptions being stolen, was not credible. Instead, the ALJ found that M.S. was clearly seeking drugs from Masood, and that Masood was aware of "M.S.'s drug seeking" yet continued to supply him with controlled substances.

¶ 16    The ALJ concluded, however, that the Department had not proven the first count, based on the DEA's reports that Masood prescribed a very large total sum of controlled substances over a two-year period, because Masood's patient monitoring program data had not been introduced into evidence. The ALJ also found that the Department had not proven its allegation regarding Masood's lack of compliance with the Department's subpoena.

¶ 17    Based on the two proven counts against Masood, the ALJ recommended that Masood's licenses be suspended indefinitely for at least two years. The ALJ noted that Masood's offenses were very serious and dangerous to his patients. In addition to harming those individuals, the ALJ noted that the improper prescribing of opioids harms the general public. Masood's actions reduce the public's trust in physicians, and contribute to the normalization of improperly using controlled substances. The ALJ found that Masood's lack of contrition for his actions was an aggravating

factor in the recommended sentence, and Masood "demonstrated no appreciation for the profound risks he took with his patients' lives and health." In mitigation, the ALJ noted that Masood stated that he was not currently practicing pain management, and he did not intend to do so in the future.

¶ 18    The ALJ concluded that

"it [wa]s in the interest of [Masood] and the general public that [Masood] understands that ignoring warnings of a patient's misuse of controlled substances and inappropriately prescribing controlled substances is a very serious matter that risks harming the public and the practice of medicine. Furthermore, the [ALJ] concludes that it is in the interest of [Masood] and the general public that [Masood] understands that prescribing controlled substances for reasons other than medically accepted therapeutic purposes so that [Masood]'s patients may misuse controlled substances is a profoundly serious matter that risks harming the public and the practice of medicine. To make certain that [Masood] understands the severity of his conduct and its potentially harmful results, and to provide [Masood] with time to consider the matter, the [ALJ] recommends that [Masood]'s physician license be suspended indefinitely for a minimum of two years, and that [Masood]'s controlled substance license also be suspended indefinitely for a minimum of two years."

¶ 19    Thereafter, the Medical Disciplinary Board ("Board") reviewed the record, and adopted the ALJ's findings of fact, conclusions of law, and recommended discipline. The Acting Director of the Division of Professional Regulation then entered an order on November 9, 2021, finding the recommended discipline appropriate. The Director emphasized that Masood's

"violations are serious in nature. Both patients' histories contained serious red flags that went unnoticed or ignored. In the instant matter, both of these patients were

7

encouraged by [Masood]'s actions or inaction to keep pursuing controlled substances from him. *** On a larger level, [Masood's] approach to prescribing controlled substances ha[s] the potential to harm other patients under [his] care and contribute[s] to the opioid epidemic."

The Director further recognized that this was not an isolated incident, but rather an approach to two patients that was "almost mechanical in frequency and amount and occurred over a number of years." The Director noted that Masood showed no contrition for his offenses, and found that his "conduct is not reflective of a medical professional who warrants the public trust." Accordingly, the Director ordered both Masood's Physician and Surgeon License and Controlled Substance License "indefinitely suspended for a minimum period of two (2) years."

¶ 20    The next day, on November 10, 2021, Masood filed a complaint for administrative review in the circuit court. Among other things, Masood alleged that the ALJ's findings of fact "presented an incomplete record of the evidence and testimony presented at the hearing," that the ALJ improperly allowed certain testimony, "impermissibly limited cross-examination," and improperly admitted certain exhibits. Masood also alleged that the ALJ improperly weighed evidence regarding his care for patients S.W. and M.S., and that the discipline imposed was overly harsh.

¶ 21    Two days later, on November 12, 2021, Masood sought an emergency stay of enforcement of the administrative agency's decision pending administrative review. Masood argued that the suspension of his license would cause "dire consequences" because his license was the "sole means by which" Masood supported himself and his family, and because his patients would be "left without a physician to address their medical needs."

¶ 22    The Department filed a brief in opposition to plaintiff's emergency motion to stay, arguing that Masood could not meet the stringent requirements to receive a stay under Section 3-111(a)(1)

of the Administrative Review Law (735 ILCS 5/3-111(a)(1) (West 2020)), and that he failed to demonstrate any of the factors necessary to receive a stay. Specifically, as to Masood's "likelihood of success on the merits," the Department noted that most of plaintiff's grievances essentially alleged that the ALJ made "evidentiary or credibility errors" but that Masood could not demonstrate an abuse of discretion.

¶ 23    After a hearing, a transcript of which does not appear in the record on appeal, the circuit court entered a written order on November 19, 2021, denying Masood's motion for an emergency stay, and finding that Masood had "not sufficiently shown a basis for a stay under the circumstances." The court observed that Masood's alleged conduct was "egregious" and "involved direct patient care," further noting that "[p]ursuant to the Act, the legislature suggest[ed]" that staying sanctions in such a case would be against public policy. The court also found that Masood failed to raise "a fair question of a likelihood of success on the merits."

¶ 24    On November 29, 2021, Masood filed a notice of interlocutory appeal from the denial of his emergency motion to stay pursuant to Illinois Supreme Court Rule 307 (eff. Nov. 1, 2017). Two days later, Masood filed an emergency motion in this court, seeking an immediate stay pending the interlocutory appeal. The Department opposed the motion, and this court denied it.

¶ 25    In this appeal, Masood contends that the circuit court abused its discretion in denying his motion to stay.

¶ 26    Under section 3–111(a)(1) of the Administrative Review Law, the circuit court may stay the decision of an administrative agency, "upon notice to the agency and good cause shown[.] * * * 'Good cause' requires the applicant to show (i) that an immediate stay is required in order to preserve the status quo without endangering the public, (ii) that it is not contrary to public policy, and (iii) that there exists a reasonable likelihood of success on the merits." 735 ILCS 5/3–111(a)(1)

(West 2014). The moving party bears the burden of substantiating each factor (*Kenny v. Kenny Industries Inc.*, 406 Ill. App 3d 56, 65 (2010)), and the failure to meet even one factor is fatal to the movant's claim (*Metz v. Department of Professional Regulation,* 332 Ill. App. 3d 1033, 1037 (2002)).

¶ 27    Our standard of review of the circuit court's grant or denial of a stay is "highly deferential" and that decision will be reversed only upon a finding of an abuse of discretion. *Health Alliance Medical Plans, Inc. v. Department of Healthcare & Family Services,* 2011 IL App (4th) 110495, ¶ 29. An abuse of discretion occurs only where the trial court's ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court. *Parikh v. Division of Professional Regulation of Department of Financial & Professional Regulation,* 2012 IL App (1st) 121226, ¶ 24. Under the abuse of discretion standard, the reviewing court's role is not to substitute its judgment for that of the trial court, or even to determine whether the trial court acted wisely. *Midas International Corp. v. Mesa, S.p.A.,* 2013 IL App (1st) 122048, ¶ 22.

> "In determining whether the circuit court abused its discretion, this court should not decide whether it agrees with the circuit court's decision, but rather, should determine whether the circuit court acted arbitrarily without the employment of conscientious judgment or * * * exceeded the bounds of reason and ignored recognized principles of law so that substantial prejudice resulted. [Citation.]" (Internal quotation marks omitted.) *Id.*

¶ 28    As an initial matter, we must comment on the state of the record on appeal. Masood has filed only the common law record, which notably does not include the Department's complaint or amended complaint against him, or the exhibits that were submitted to the ALJ. The record does not contain a report of proceedings or any transcripts, including from the days-long hearing before

the ALJ, or the circuit court's hearing on Masood's November 12, 2021, emergency motion to stay, which is the subject of this appeal.

¶ 29   As we review the circuit court's decision to deny Masood's motion for an abuse of discretion, the question becomes whether the absence of a transcript or suitable substitute impacts our review. "[A]n appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error, and in the absence of such a record on appeal, it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch v. O'Bryant,* 99 Ill. 2d 389, 391–92 (1984). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Id.* at 392. This presumption applies "especially" where, like here, the standard of review is the abuse-of-discretion standard. See *Gakuba v. Kurtz*, 2015 IL App (2d) 140252, ¶ 22.

¶ 30   As stated, Masood failed to include a report of proceedings from the hearing on his motion to stay or an acceptable substitute. See Ill. S. Ct. R. 323 (eff. July 1, 2017). In order to determine whether the circuit court abused its discretion in denying his motion, a reviewing court must have a record to review, and without the transcript, we cannot review the circuit court's discretionary ruling. Without knowing what facts or legal arguments the parties made to the circuit court, or what findings were made by the trial court, we must presume that the circuit court had a legitimate basis for denying the motion. See *Gakuba,* 2015 IL App (2d) 140252, ¶ 22. Without an adequate record, we presume that the trial court's order had a sufficient factual basis and conformed with the law. *Foutch,* 99 Ill. 2d at 391-92 (where appellant did not provide a transcript or bystander's report of the hearing on a motion to vacate, the reviewing court had no basis for holding that the trial court had committed an error in denying the motion); see also *In re Marriage of Hofstetter*, 102 Ill. App. 3d 392, 396 (1981) ("[i]t is not the obligation of the appellate court to search the

11

record for evidence supporting reversal of the circuit court. *** When portions of the record are lacking, it will be presumed that the trial court acted properly in entry of the challenged order and that the order is supported by the part of the record not before the reviewing court").

¶ 31    The insufficiency of the record also presents a particular problem in this case. Although the subject of this appeal is the circuit court's denial of Masood's motion to stay, not the underlying administrative challenge, Masood was required to show a reasonable likelihood of success on the merits of his underlying challenge to obtain his desired relief. This court, however, is hindered in assessing the underlying merits of Masood's claims, where he has not provided this court with a sufficient record to support his claims of error. As stated above, the record does not include the Department's complaint or amended complaint against him, a transcript of the multi-day hearing, or the exhibits that were submitted to the ALJ.

¶ 32    Most of Masood's underlying challenges concern various issues that are committed to the Department's discretion. Among other things, Masood contends that the ALJ improperly limited cross-examination of the Department's expert witness, that the ALJ erred in allowing the Department to amend the complaint to add Count V, and in denying one of his requests to issue a subpoena.  Masood also contends that the Department did not meet its burden of proof, that the Department should have weighed the evidence differently, and that the finding that his testimony was incredible was "not supported by the record."

¶ 33    "It is for the Director, as the trier of fact, to evaluate all evidence, judge the credibility of witnesses, resolve any conflicts in the evidence, and draw reasonable inferences and conclusions from the facts." *Anderson v. Department of Professional Regulation*, 348 Ill. App. 3d 554, 561 (2004). "The Director may accept or reject as much or as little of a witness's testimony as he pleases." *Morgan v. Department of Financial & Professional Regulation*, 388 Ill. App. 3d 633,

658 (2009). It is not the function of this court to " 'reevaluate witness credibility or resolve conflicting evidence,' but rather to determine only 'whether the findings of fact are supported by the manifest weight of the evidence.' " *Id.* (quoting *Ulysse v. Lumpkin*, 335 Ill. App. 3d 886, 893 (2002)).

¶ 34    Even if there could be any possible merit to Masood's challenges, this court cannot review them without an adequate record of what was before the ALJ. This court cannot entertain Masood's challenges to the underlying hearing before the ALJ without a record to substantiate his claims of error. While it is not this court's prerogative to reevaluate witness credibility or resolve conflicting evidence (*Morgan v. Department of Financial & Professional Regulation,* 374 Ill. App. 3d 275, 288 (2007)), it is even more clear that we are unable to do so here, without a record from the underlying administrative proceedings.

¶ 35    In an apparent attempt to remedy certain deficiencies in the record, Masood has attached a two-and-a-half page double spaced affidavit from his attorney to the appendix filed with his appellate brief.  In that affidavit, counsel articulates certain decisions made by the ALJ, and counsel's understanding of the ALJ's reasoning. Counsel specifically makes certain allegations regarding the ALJ denying counsel's request to issue a subpoena, and "preventing" counsel from an intended line of cross-examination. His affidavit, however, is not a part of the record on appeal, and it cannot be considered by this court. See *In re Marriage of Kuyk,* 2015 IL App (2d) 140733, ¶ 21 (attachments to briefs not otherwise of record are not properly before this court). Moreover, counsel's affidavit is not a bystander's report as permitted by Supreme Court Rule 323(c) (eff. July 1, 2017).

¶ 36    The purpose of a bystander's report is to serve as a substitute for a verbatim transcript of court proceedings. See Ill. S. Ct. R. 323(c) (eff. July 1, 2017). Counsel's two-and-a-half page

double spaced affidavit is clearly inadequate to serve as a substitute for the verbatim transcript of a several-day hearing. Additionally, a bystander's report must comply with Supreme Court Rule 323(c) (*City of Pekin v. Mann*, 44 Ill. App. 3d 1, 2 (1976)), which provides that, upon notice, an appellant may "present [a] proposed report or reports and any proposed amendments to the trial court for settlement and approval," and the trial court, "holding hearings if necessary, shall promptly settle, certify, and order filed an accurate report of proceedings." Ill S. Ct. R. 323(c) (eff. July 1, 2017). There is no indication here that the Department received notice of counsel's affidavit, or that Masood sought or obtained certification from the trial court. "In the absence of some designation on the document that the judge certified the facts recited therein to be accurate, the document may not be considered a bystander's report." *People v. Gerwick*, 235 Ill. App. 3d 691, 693 (1992); see also *Landau & Associates, P.C. v. Kennedy*, 262 Ill. App. 3d 89, 91 (1994) ("An attorney's affidavit cannot be used to supplement the record in lieu of a transcript or a bystander's report.").

> "To permit an appellant to proceed in an appeal upon a bystander's report based solely upon his interpretation of the evidence and memory as to what happened during the trial, without acknowledgement by the appellee, and with complete disregard of the trial judge's duty to settle and certify the report serves to thwart the purpose and intent of Supreme Court Rule 323(c)."

*Mann*, 44 Ill. App. 3d at 2.

¶ 37    Finally, we note that Masood argues that "at least part of the issues involved" in this case are subject to *de novo* review because they present questions of "statutory review and application." Although Masood does not specifically identify which issues are subject to *de novo* review, he appears to be referring to his argument that the circuit court erred in deciding that public policy

did not support granting the stay. In so arguing, Masood focuses on a single statement in the circuit court's order—that "the legislature suggests violations including direct patient care should as a matter of public policy not result in penalties being stayed pending final court resolution on the merits." Relying on this statement, Masood contends that the circuit court "f[ound] that it did not have the legal ability to grant a stay," and that the court's incorrect interpretation "renders the statutory provision allowing stays under the Administrative Review Act *** meaningless and superfluous." The Department responds that the order does not indicate that the circuit court believed it was *per se* required to find that public policy did not support a stay, and, instead, that the circuit court properly exercised its discretion specifically noting his egregious conduct.

¶ 38    Initially, we disagree with Masood's reading of the order. We do not believe that the court's order can be read to indicate that it was required to deny the stay, particularly where the court went on to comment on the egregiousness of Masood's conduct, as well as his failure to show a likelihood of success on the merits. Nonetheless, even assuming that the circuit court utilized an incorrect legal standard in finding that a stay was against public policy, it would not absolve Masood of his burden to establish the first and third elements, namely that the stay would preserve the status quo without endangering the public, and that Masood had a reasonable likelihood of success on the merits. See *Metz,* 332 Ill. App. 3d at 1037 (2002) ("In order to establish 'good cause,' all of the elements recited in the statute must be met."). As we have previously found that Masood failed to provide a sufficient record from which we could conclude that the circuit court abused its discretion, we need not further address this claim.

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County, denying Masood's motion to stay the suspension of his medical licenses pending administrative review.

¶ 40    Affirmed.